936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David HOLSTON, Plaintiff-Appellant,
v.
CAROLINA FREIGHT CARRIERS CORPORATION, a foreign
corporation, and Michael Bruno, Defendants-Appellees.
 No. 90-1358.
 United States Court of Appeals, Sixth Circuit.
 June 26, 1991.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 David Holston appeals from the district court's denial of his motions to remand and for a rehearing, and from the district court's grant of summary judgment to defendants on his two state-law claims of wrongful discharge based upon an alleged unequal application of Carolina Freight's anti-nepotism policy, and of breach of an oral contract to employ him. Because we hold that Carolina's removal petition was untimely, we reverse the district court and remand this case with instructions that it be returned to state court.
 
 
 2
 * Holston was employed as a "casual" truck driver by Carolina Freight at its Troy, Michigan terminal from April 1987 until March 1988. "Casual" was a job classification under the collective bargaining agreement ("CBA") then in effect between Carolina Freight and the Teamsters Union, Local 614 ("union"). A "casual" driver was a temporary employee with neither seniority rights nor job security. As a "casual" driver, Holston was required to join the union to keep his job. Holston did join the union. Holston signed a union authorization/check off card that gave Carolina Freight permission to deduct union dues from his salary. Carolina Freight received Holston's card in December 1987.
 
 
 3
 Holston was informed in March 1988 by defendant Michael Bruno, a supervisor at Carolina Freight's Troy terminal, that he could no longer be used as a "casual" there because Carolina Freight had an anti-nepotism policy barring the use of close relatives at the same terminal, and Holston's father also worked there. Holston also states that other Carolina Freight supervisors told him that he would be sent to the company's driving school to obtain a C-2 trucking license, and that he would then be hired for a full-time job.
 
 
 4
 Holston filed his complaint in Michigan state court on May 12, 1989. Holston's complaint mentions neither his membership in a labor union or the existence of a collective bargaining agreement. Carolina Freight did not immediately attempt to remove, filing an answer instead. Carolina Freight amended its answer on August 29, 1989 to include a "pre-emption" defense. Carolina Freight also submitted answers to Holston's interrogatories on August 22, 1989. Its answer to interrogatory nine indicated that Holston was employed as a "casual." While the answer itself made no reference to the CBA, Carolina Freight attached a copy of the CBA to the answer to support its claim that Holston had no seniority or vested job rights under the CBA.
 
 
 5
 Carolina Freight took Holston's deposition on October 5, 1989. At this deposition, Holston admitted facts that showed he was a member of the union, that the oral promise was made while he was employed as a "casual"--a job covered by the CBA--and that the full-time job he was promised by the Carolina Freight supervisors was also covered under the CBA.
 
 
 6
 Carolina Freight filed its removal petition on October 24, 1989. It alleged that its petition was timely filed within thirty days of its receipt of the transcript of Holston's deposition. The basis for the removal petition was that Holston's state-law claims really stated a federal law claim under Sec. 301 of the Labor Management Relations Act ("LMRA"). Holston then filed a petition for remand, arguing that Carolina Freight's petition was not timely because it had actual knowledge that the case was potentially pre-empted at the time the amended answer was filed on August 29. Carolina Freight then filed a motion for summary judgment.
 
 
 7
 The district court denied Holston's motion for remand and granted Carolina Freight's summary judgment motion on February 9, 1990. Holston then filed a motion for rehearing, alleging that Carolina Freight's possession of his card authorizing the withholding of union dues was "newly discovered evidence" showing that Carolina Freight had actual knowledge of the potential for pre-emption at the time the case was filed. This motion was denied on March 12, 1990. Plaintiff's timely appeals followed.
 
 II
 
 8
 * The federal courts have no jurisdiction over Holston's state claims unless Carolina Freight's removal petition is valid and timely. See United States ex rel. Walker v. Gunn, 511 F.2d 1024 (9th Cir.), cert denied, 423 U.S. 849 (1975). Assuming without deciding that Carolina Freight's allegation that Holston's state law claims are pre-empted by Sec. 301 of the LMRA states a valid basis for removal, we nevertheless hold for the following reasons that the petition is untimely.
 
 B
 
 9
 Both parties agree that removal jurisdiction may exist for this case only because of 28 U.S.C. Sec. 1446(b). That section consists of two paragraphs. Both parties agree that only the second paragraph is at issue here. That second paragraph reads as follows:
 
 
 10
 If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.
 
 28 U.S.C. Sec. 1446(b).[1]
 
 11
 It has been uniformly held that the failure to file for removal within the thirty-day period, while waivable by plaintiff, is a formal barrier to the exercise of federal jurisdiction.
 
 
 12
 Holston contends that Carolina Freight's removal petition is untimely because it was not filed within thirty days of the date when Carolina Freight had unambiguous information that Holston's claim was really a claim for violation of the CBA. Holston's contention would deprive us of jurisdiction if Sec. 1446(b) starts the thirty-day period running when a defendant has information[2] in its possession that would lead it to believe without speculation that the case is removable. See Mielke v. Allstate Insurance Co., 472 F.Supp. 851 (E.D.Mich.1979) (defendant is not required to file for removal solely upon speculation that the case might be removable). If Sec. 1446(b) requires, as Carolina Freight contends, that the information establishing removal must come from a source outside of defendant's control, then the case is properly before us. Carolina Freight filed its petition within thirty days of its receipt of the transcript of Carolina's deposition of Holston,[3] which contained facts suggesting the possibility of removal.
 
 
 13
 We hold that Sec. 1446(b) starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within its own possession. We reach this conclusion from considering the purpose of this section.
 
 
 14
 It is axiomatic that the statutes conferring removal jurisdiction are to be construed strictly. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). See Holly Farms Corp. v. Taylor, 722 F.Supp. 1152 (D.Del.1989); McCurtain County Production Corp. v. Cowett, 482 F.Supp. 809 (E.D.Okla.1978) (doubts about removal should be resolved in favor of remand). This is because removal jurisdiction encroaches on state jurisdiction, and the interests of comity and federalism require that federal jurisdiction be exercised only when it is clearly established. Thus, any ambiguity regarding the scope of Sec. 1446(b) must be resolved in favor of remand to the state courts.
 
 
 15
 We believe that Sec. 1446(b) is ambiguous regarding the issue presented here. The second paragraph of section 1446(b)'s "clear purpose is to commence the running of the thirty-day period once the defendant receives actual notice that the case has become removable...." 14A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, Sec. 3732 at 520. However, the statute is not clear from whom the defendant must receive that notice. A creative interpretation of the statute can give rise to an inference that the defendant must receive the notice from the plaintiff or another external source. One such interpretation involves examining the structure of the statute. The thirty-day period only starts running upon receipt of a pleading, summons, motion, order, or other paper. All the specifically named papers come from either the plaintiff or the court. These papers may come into defendant's possession "through service," and a defendant cannot "serve" itself. These papers must also be "received" by the defendant, and it can be said that an entity cannot receive things from itself. This long line of inductive reasoning leads to the hypothesis that Sec. 1446(b) implicitly starts the thirty-day clock running only when the defendant receives information about the removability of a case from another source.
 
 
 16
 There is another way of reading the statute. The statute triggers the thirty-day period from the receipt of notice of facts that lead to the possibility of removal, not from a clear statement that the case is removable. Neither paragraph of Sec. 1446(b) prevents the source of that notice from being the defendant. The fact that an "other paper" received "otherwise" than by service triggers the thirty-day period leaves open the possibility that such facts can come to the defendant by a myriad of means not squarely contemplated by the drafters of Sec. 1446(b). Such means can obviously include papers discovered by the defendant during its trial preparation.
 
 
 17
 The requirement that such facts must be "received" by the defendant does not detract from this alternative conclusion. The defendant may have the papers in its possession as of the filing of the suit, but it does not receive notice of the facts contained therein until it reviews those papers in connection with the suit. As Sec. 1446(b) is concerned with the facts contained in the papers, see First National Bank in Little Rock v. Johnson & Johnson, 455 F.Supp. 361, 362 n. 1 (E.D.Ark.1978) (purpose of Sec. 1446(b) "other paper" clause is to trigger the thirty-day period "only after the defendant is able to ascertain intelligently that the requirements of removability are present"), a defendant may receive notice of those facts from papers within its possession because it did not have notice of the removability simply by virtue of its possession of the papers.
 
 
 18
 The adoption of the first, inductive, reading of Sec. 1446(b) would give a defendant an enormous advantage in the conduct of the litigation. A defendant with greater resources than the plaintiff could discover very soon after filing the complaint that the case is removable, yet force the plaintiff to exhaust his resources in state court until it asked the plaintiff the questions that would establish removability in a deposition or interrogatory. We will not broaden the scope of the statute by inferring a requirement that permits the defendant to sit upon information in its possession until it feels the time is right to trigger removal by "receiving" that same information in the form of answers to defendant's questions in interrogatories or depositions. In light of the command to construe removal statutes strictly, we believe this determination is required by law.
 
 III
 
 19
 We recognize that this reading of Sec. 1446(b) is against the majority of authority in the district courts. Of those courts that have considered the issue before us, three have agreed with us and six have disagreed. The three courts that have agreed with us have all focused on the fact that the defendant knew the information that gave rise to removal well before it supposedly "discovered" that the case was removable. See United Gas Pipe Line Company v. Brown, 207 F.Supp. 139 (E.D.La.1962) (removal is untimely because defendants had earlier possessed the information that the case was removable); Mielke v. Allstate Insurance Company, 472 F.Supp. 851 (E.D.Mich.1979) (removal untimely when defendant admitted it knew the case was removable before the filing of the complaint); Keller v. Carr, 534 F.Supp. 100 (W.D.Ark.1981) (removal untimely where defendant knows its own citizenship and removal is based on diversity).
 
 
 20
 On the other hand, the six cases that disagree with us all infer from the structure of the statute that the defendant has no active role to play in removal apart from deciding to file the petition. They all implicitly infer from the word "receives" that the information regarding removal must come from a source other than the defendant. See Jong v. General Motors Corp., 359 F.Supp. 223 (N.D.Cal.1973) ("the statute expressly allows a defendant to rely on papers presented it"); Camden Industries Company v. Carpenters Local Union No. 1688, United Brotherhood of Carpenters and Joiner America, 246 F.Supp. 252 (D.N.H.), aff'd, 353 F.2d 178 (1st Cir.1965) ("[S]ection 1446(b) is unambiguous in providing that the initial pleading itself is to govern, regardless of knowledge a defendant may have"); Fisher v. United Airlines, Inc., 218 F.Supp. 223 (S.D.N.Y.1963) (1446(b) does not require a defendant to investigate diligently the facts of the complaint to see if facts permitting removal are present); Fuqua v. Gulf, Colorado and Santa Fe Railway Co., 206 F.Supp. 814 (E.D.Okla.1962); Heafitz v. Interfirst Bank of Dallas, 711 F.Supp. 92 (S.D.N.Y.1989) ("Section 1446(b) expressly provides however, that only a written instrument can trigger the thirty day period"); Smith v. International Harvester Co., 621 F.Supp. 1005 (D.Nev.1985).
 
 
 21
 However, none of these cases parses the language of Sec. 1446(b) to determine if it unambiguously answers the question before us. As we are not bound by any of these opinions, and removal statutes must be interpreted in favor of remand in cases of ambiguity, the logic of the cases in opposition to our view does not persuade us to ignore the ambiguous language of the statute.
 
 
 22
 Carolina Freight also contends that the cases interpreting Sec. 1446(b) have held that only facts emanating from a voluntary act of a plaintiff can give rise to removal jurisdiction after the initial complaint. While Carolina Freight is correct in stating that many cases do state that subsequent removability is triggered only by voluntary acts of the plaintiff, see White v. Hughes, 409 F.Supp. 1005 (W.D.Tenn.1975); Warren Brothers Company v. Community Building Corporation of Atlanta, Inc., 386 F.Supp. 656 (M.D.N.C.1974); Lyon v. Illinois Central Railroad Co., 228 F.Supp. 810 (S.D.Miss.1964), these cases are not applicable to this one. First, the voluntary act of the plaintiff doctrine was initially developed, and has subsequently been applied almost exclusively in, cases where a non-diverse defendant is dismissed from the case leaving a new state of complete diversity between the parties. This case involves federal question removal, not diversity removal, and Carolina Freight offers no reason to extend the doctrine to federal question removal cases. Second, we agree with the court in Gilardi v. Atchison, Topeka and Santa Fe Railroad Co., 189 F.Supp. 82 (N.D.Ill.1960) that the doctrine would not apply here even if it applied generally to federal question removal. The Gilardi court stated:
 
 
 23
 Plaintiff mistakenly contends that the case may be ascertained to be removable only as a result of some voluntary act on his part. He has apparently confused the situation--where the case stated initially is not removable because of some voluntary act on the part of the plaintiff--with cases like the one at bar where the case stated always was removable but is not ascertained to be removable until a later time.
 
 
 24
 Gilardi, 189 F.Supp. at 84-85.
 
 
 25
 Carolina Freight's removal claim is that Holston's claim has always been in reality a federal claim under Sec. 301 of the LMRA, and that it did not discover this fact until it took Holston's deposition. Gilardi holds that the voluntary act of the plaintiff doctrine applies only when the case becomes removable after the initial pleading is filed, and we see no reason to disagree with it.
 
 IV
 
 26
 Having held that a defendant's knowledge of facts unambiguously indicating that the case is removable, when derived from papers within its sole possession, triggers the thirty-day period, we must now determine whether Carolina Freight actually derived such unambiguous knowledge from the papers at issue here. Carolina Freight contends that we cannot hold that its answers to Holston's interrogatories or its possession of Holston's union card can comprise an "other paper" conferring such unambiguous knowledge. This is because Holston did not bring its answers to the interrogatories to the district court's attention, and because Holston did not appeal from the denial of his motion for rehearing in which he argued that Carolina Freight's possession of the union card was "newly discovered evidence" that proved it had knowledge of the facts establishing removal more than thirty days before filing the removal petition. While Carolina Freight is wrong about the possession of the union card--Holston did timely appeal the denial of his motion for rehearing--neither of Carolina Freight's arguments concern us because we hold that Carolina Freight had unambiguous knowledge of the facts leading to removal as of the date on which its amended answer that raised a "pre-emption" defense was filed by stipulation.
 
 
 27
 Carolina Freight's amended answer, written on August 22, 1989 but not formally filed by stipulation of the parties and the court until August 29, 1989, added four defenses. All four involved defenses commonly raised against complaints alleging violations of Sec. 301 of the LMRA: failure to exhaust administrative remedies, failure to exhaust internal procedures, statute of limitations, and federal pre-emption. The federal pre-emption defense was particularly precise, as it stated "[p]laintiff's claim is pre-empted by the Labor Management Relations Act. 29 U.S.C. 141-197, as amended." Prior to this amended answer, none of Carolina Freight's four defenses pertained peculiarly to a federal labor law claim.[4] It is not at all a leap in logic to surmise that some new information had been found by Carolina Freight in the interim period between the filing of the initial answer and that of the amended answer. That new information clearly must have given Carolina Freight serious reason to believe that Holston's claim was in fact a federal one, as otherwise the particular defenses added to the answer would be of limited relevance to a state proceeding.
 
 
 28
 The poignancy of the amended answer is further strengthened because it was unnecessary in order to preserve any future defense. The initial answer included an explicit statement that "[d]efendants reserve the right to assert such other affirmative and/or additional defenses as may be learned during the course of discovery in this matter." In light of this clause, we find it highly unlikely that the addition of four defenses specifically useful in combatting a claim under federal labor law to be the product of an oversight or mere speculation. The amended answer included the same statement reserving future defenses. Carolina Freight would only go to the trouble of obtaining the approval of plaintiff's counsel in stipulating to the propriety of amending its answer to include these specific defenses if it thought it had a winning defense that it did not want to see fail for procedural reasons. We view the amended answer as establishing that at an unknown earlier date Carolina Freight had persuaded itself that it was in reality facing a Sec. 301 suit, and that it ought to adjust its litigation strategy accordingly. It is precisely this certain knowledge that triggers the running of the thirty-day period within which removal petitions must be filed.
 
 
 29
 Carolina Freight contends that even if it knew that Holston was a member of a union, that knowledge alone is not of an unambiguous fact creating removal jurisdiction because not every suit by a labor union member against his employer states a claim under Sec. 301 of the LMRA. True enough, but it is not simply Holston's status as a labor union member that we rely on. The amended answer clearly demonstrates knowledge that Holston's claim itself was in reality for a breach of the terms of the CBA, both in his discharge and in his claim of a separate individual contract to be sent to trucking school and hired full-time. That knowledge triggers the thirty-day period, and that knowledge was ascertained by Carolina Freight no later than the date the filing of its amended answer was stipulated to. The parties stipulated to the filing of the amended answer on August 29, 1989. Carolina Freight did not file for removal until October 24, 1989. The filing of the removal petition clearly occurred more than thirty days after the last possible date on which Carolina Freight exhibited knowledge that Holston's claim was removable. Thus, Carolina Freight's petition for removal was untimely under Sec. 1446(b).
 
 V
 
 30
 For the foregoing reasons, we hold that the district court erred when it ruled that Carolina Freight's petition for removal was timely filed. We therefore REVERSE and REMAND this case to the district court with instructions to remand this case to STATE COURT because the federal courts have no jurisdiction over this dispute.
 
 
 
 [1]
 The first paragraph reads as follows:
 The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading had then been filed in court and is not required to be served on the defendant, whichever period is shorter.
 Holston does not contend that his pleading either states a federal claim, or that certain clues existed in the complaint that should have led Carolina Freight to believe his true claim was federal. See Richman v. Zimmer, Inc., 644 F.Supp. 540 (S.D.Fla.1986) (statement of residency in complaint is a "clue" of possible diversity jurisdiction that triggers the thirty-day period). See also Kaneshiro v. North American Company for Life and Health Insurance, 496 F.Supp.452 (D.Hawaii 1980) ("clues" in initial pleadings trigger the thirty-day period). The district court found that Holston's complaint did not provide any clues regarding the removability of the case, and we may not disturb the court's findings of fact regarding jurisdictional issues unless they are clearly erroneous. Kruso v. International Telegraph Corp., 872 F.2d 1416 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). The court's finding is not clearly erroneous.
 
 
 [2]
 This opinion distinguishes between information in the defendant's possession and papers in the defendant's possession. See the discussion regarding the interpretation of the word "receives" at p. 6
 
 
 [3]
 Neither party contests the finding of the district court that a deposition of an opposing party by the petitioning party can constitute an "other paper" under Sec. 1446(b). See Riggs v. Continental Baking Co., 678 F.Supp. 236 (N.D.Cal.1988); Brooks v. Solomon Co., 542 F.Supp. 1229 (N.D.Ala.1982)
 
 
 [4]
 These defenses were: failure to state a claim, failure to mitigate, bar because of status as a casual employee, and bar because plaintiff's contract was terminable at will