Dale **BURNS**, et al., **Plaintiffs,**

v.

**PRUDENTIAL SECURITIES, INC., et al., Defendants.**

**No. 3:02CV7439.**

United States District Court, N.D. Ohio, Western Division.

Sept. 10, 2002.

David P. Meyer, Ricketts & Onda, Columbus, OH, James R. Knepp, II, Robison, Curphey & O'Connell, Toledo, OH, for Plaintiffs.

Robert N. Knapp, Calfee, Halter & Griswold, Cleveland, OH, Stacey Garrett, Terry Ross, Keesal, Young & Loan, Long Beach, CA, for Defendants.

## ORDER

CARR, District Judge.

This is a class action lawsuit alleging breach of fiduciary duty and other state law claims against a stockbroker, Jeffrey Pickett, and his employer, Prudential Securities, Inc. Plaintiffs' complaint initially was filed in the Common Pleas Court of Marion County, Ohio. Defendants timely removed the suit to this court.

Following that removal, plaintiffs sought remand on the basis that their claims were for state law violations, and did not rise, or state a cause of action under, the federal Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(2) (SLUSA). Because the plaintiffs' complaint contained only "an allegation of one instance of unauthorized trading," rather than any allegation that the defendants had violated SLUSA either misrepresenting or omitting a material fact or using or employing a manipulative or deceptive or other contrivance, remand was ordered. *Burns v. Prudential Securities,* 116 F.Supp.2d 917, 924 (N.D.Ohio 2000).

In two years following remand, this case proceeded on an apparently unremarkable course in the state court. It was due to start trial on September 9, 2002. Its progress toward termination in the state court was, however, derailed by defendants' notice of removal, filed on the morning that trial was to start. Within a few hours thereafter, plaintiffs filed a motion to re-

mand, on which argument was heard later that day.

For the reasons that follow, I find that the removal notice was timely. I also find, however, that the plaintiffs continue, despite certain intervening appearances to the contrary, to assert state law, and not federal law claims.

Plaintiffs are investors whose accounts were managed by defendant Pickett. On his own, and without prior authorization from plaintiffs, Pickett liquidated plaintiffs' equity holdings. He did so, apparently, out of concern that the market was about to crash. Instead, it kept going up. Plaintiffs allege, inter alia, that Pickett violated his fiduciary obligations to the plaintiffs.

Plaintiffs allege, with regard to Prudential, that it violated its fiduciary obligation to inform them fully, fairly, and accurately about material conditions and circumstances by making false statements and omissions. In addition, plaintiffs allege that such false statements and omissions undercut the defendants' claim that they ratified Pickett's sales on receiving notice that such sales had occurred.

Well before the thirty-day period within which a removal notice must be filed under 28 U.S.C. § 1446(b), the parties were well aware that the evidence of allegedly fraudulent statements or omissions might be introduced at trial. Because plaintiffs expressly were not asserting fraudulent misrepresentations as a basis for recovery in their complaint, defendants understood that such evidence was relevant only to rebut the defendants' ratification defense.

That plaintiffs desired to use the evidence of fraudulent misrepresentations more expansively became clearly apparent at an August, 2002, pretrial conference.

At that conference, and without prior indication that they would be doing so, plaintiffs presented a proposed jury instruction which would have informed the jury that "Plaintiffs claim that Defendants Jeffrey Pickett and/or Prudential Securities, Inc., concealed material facts and made misrepresentations about material facts after the unauthorized transactions occurred, and therefore Defendants defrauded Plaintiffs." (Notice of Removal, Exh. D).

On receipt of that proposed instruction, defendants demanded that the plaintiffs amend their complaint to state a fraud claim. Plaintiffs declined to do so; had they done so, their case would clearly have been removable under the SLUSA. Instead, they withdrew their request for that jury instruction.[1]

Prior to that conference, defendants had filed several motions in limine. One of those motions sought to bar evidence of allegedly false statements or omissions by Prudential. That motion was overruled at the second pretrial conference.

The trial court's order stated:

The plaintiffs have clearly indicated an intention to present an extension of their claim of breach of fiduciary duty by offering evidence that the defendant, Prudential Securities, Inc. (Prudential), had and breached a continuing fiduciary duty during a period of months after the unauthorized sales at issue by, among other things, omitting to state material facts, or concealing material information relevant to plaintiffs' determinations or choices of action in response to the subject transactions. They further intend to request punitive damages from Prudential as a result of the alleged breach. Prudential has objected, arguing that such a continuing breach was not contained in the pleadings.

---

1. Plaintiffs' counsel represented during argument on the remand motion that submission of the proposed fraud instruction had been a mistake attributable to oversight on the part of one of plaintiffs' attorneys. I credit this explanation.

The court find that the pleadings contained a claim for breach of fiduciary duty. The court further finds that discovery, pretrial motions, negotiations, and even mediation, included assertions of the continuing nature of this claim, sufficient to deem it a part of the complaint as of this date. Therefore, subject to proper foundation, such evidence will be allowed.

(Motion to Remand, Sept. 6, 2002, Marion County Journal Entry).

### Discussion

Plaintiffs' motion to remand raises two issues: 1) the timeliness, or lack thereof, of defendants' notice of removal; and 2) whether removal is proper. I find that the notice was timely filed, but that defendants have not shown that they are entitled to have this case removed.

### 1. Timeliness of Removal

■ Plaintiffs contend that the removal notice, coming immediately before the trial was due to start, was not timely. In their view, defendants were on notice long before the thirty day period of § 1446(b) that plaintiffs would be seeking to recover punitive damages, in part, on the basis of Prudential's conduct following Pickett's liquidation of their accounts.

Section 1446(b) provides, in pertinent part:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, . . . .

The time for filing a notice of removal begins to run "from the date that a defendant has solid and unambiguous information that the case is removable. . . ." *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 1991 WL 112809, *3 (6th Cir.1991) Unpublished Disposition; *see also Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999) ("removal period does not begin until the defendant is able 'to intelligently ascertain removability . . . . If the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design.'") (citations omitted); *Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.*, 753 F.Supp. 660, 663 (N.D.Ohio 1990) (time for removal begins once "a reasonably qualified attorney would or should have known" that removal was proper); *Mielke v. Allstate Ins. Co.*, 472 F.Supp. 851, 853 (E.D.Mich. 1979) (time for filing removal notice begins when "defendant should clearly ascertain from the circumstances" that removal was proper).

Where, as with SLUSA, Congress has manifested an intent to pre-empt state court jurisdiction completely, the fact that, as here, the face of a complaint asserts only a state claim does not bar removal. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n. 11 (6th Cir.2002).[2] As I previ-

---

2. In *Peters*, which involved preemption under ERISA, the Sixth Circuit stated, "to come within the [complete preemption] exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action 'to recover benefits due to him under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan' . . . ."

This statement can be paraphrased to fit this case: to come within the complete preemption exception a court must conclude that the common law claim under state law should be characterized as a superseding SLUSA action to recover damages for "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" or to enforce rights established by SLUSA.

ously noted in my earlier decision remanding this case to the state court, Congress has completely preempted state court jurisdiction in cases covered by SLUSA. 116 F.Supp.2d at 919. But, in view of the absence of any allegation of fraud at the time of that decision, this case was not covered by SLUSA.

At this point (postponing, for the moment, the issue of whether the case is removable), the question is when defendants had "solid and unambiguous information that the case is removable," *Holston, supra,* so that they could "intelligently ascertain removability." *Huffman, supra.* I conclude that plaintiffs first gave indication that they might be seeking to recover for defendants' alleged fraud when they submitted their proposed jury instruction at the August, 2002, pretrial conference. Before then, defendants could reasonably view any evidence about their fraudulent statements or omissions as relevant solely to their defense of ratification.

Plaintiffs respond that their claim remains simply one of breach of fiduciary duty, and, to the extent that they wish to introduce evidence of misstatements and omissions, that evidence relates to events occurring after the unauthorized liquidation of their accounts. They contend that defendants had a continuing fiduciary obligation to deal honestly with them after their equity holdings had been liquidated. They do not contend that misstatements preceded or accompanied the liquidation. They do not allege that they were led to sell their stocks by anything that Pickett told them before the sale.

Instead, the gravamen of plaintiffs' complaint is that, acting on his own, and without prior approval, Pickett sold out their holdings. After that, they allege, the defendants failed to inform them honestly and accurately about the situation and circumstances in violation of their obligation as fiduciaries to deal with them honestly and fairly.

Any such post-hoc misrepresentations of omissions could not, by their very nature, have affected the decision to sell—which was, in any event, not made by them. Those misrepresentations, they allege, affected what they did or did not do thereafter. Had the defendants' fulfilled their fiduciary obligation to keep them fully, fairly, and accurately informed, they could have reacted in a way that protected, rather than endangered, their financial well-being. So this remains, so far as I presently can tell, a claim for breach of fiduciary duty, as to which one component is unauthorized sale and the other is a failure to inform accurately and fully as to material matters.

As a general rule, where otherwise fraudulent statements or omissions occur after the decision to buy or sell securities, those statements or omissions are not deemed "in connection with" such purchases or sales. *See Ausa Life Ins. Co. v. Dwyer (In re JWP Inc. Securities Litig.),* 928 F.Supp. 1239, 1253 (S.D.N.Y.1996) ("Misrepresentations made after the purchase or sale in question cannot satisfy the 'in connection with' requirement."); *Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 799 (S.D.N.Y.1987) ("statements made ... subsequent to plaintiff's purchase[ ] are not in themselves actionable under Section 10(b)."); *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1124 (S.D.N.Y.1986) ("[S]ince plaintiff had already sold his shares at the time of the publication of the preliminary prospectus, he cannot have been injured by defendant's allegedly fraudulent acts occurring more than two years after the sale.").

The Supreme Court's recent decision in *S.E.C. v. Zandford,* —— U.S. ——, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002), on which the defendants rely to support their con-

tention that events subsequent to a purchase or sale of securities can be "in connection with" such purchase or sale, is distinguishable. In that case, a broker engaged in a continuous series of unauthorized transactions and kept the proceeds for himself. Finding that the retention of the proceeds was in connection with the sales, and finding that the complaint had been dismissed improperly, the Court stated:

> According to the complaint, respondent "engaged in a scheme to defraud" ... beginning in 1988, shortly after [the victims] opened their account, and that scheme continued throughout the 2–year period during which respondent made a series of transactions that enabled him to convert the proceeds of the sales of the [ ] securities to his own use. App. to Pet. for Cert. 27a–29a. *The securities sales and respondent's fraudulent practices were not independent events. This is not a case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so.* Nor is it a case in which a thief simply invested the proceeds of a routine conversion in the stock market. Rather, respondent's fraud coincided with the sales themselves.
>
> Taking the allegations in the complaint as true, each sale was made to further respondent's fraudulent scheme; each was deceptive because it was neither authorized by, nor disclosed to, the Woods. With regard to the sales of shares in the Woods' mutual fund, respondent initiated these transactions by writing a check to himself from that account, knowing that redeeming the check would require the sale of securities. Indeed, each time respondent "exercised his power of disposition for his own benefit," that conduct, "without more," was a fraud. In the aggregate, the sales are properly viewed as a "course of business" that operated as a

fraud or deceit on a stockbroker's customer.

— U.S. at —— – ——, 122 S.Ct. at 1903–04 (citations omitted) (emphasis supplied)

Here there were distinct events, rather than a continuous series: initial sales by Pickett, followed by alleged misrepresentations or omissions by him and Prudential. Unlike the situation in *Zandford,* lawful (i.e., non-fraudulent, and otherwise non-criminal) transactions were followed by independent acts, primarily on the part of brokerage house. There is no allegation of a common scheme from the outset, or even that Pickett knew or anticipated that Prudential would engage in the alleged misrepresentations or omissions after his sole and self-induced liquidation of plaintiffs' accounts.

As the state court Judge found, plaintiffs have expanded their claim as a result of information developed during discovery to encompass a failure to deal honestly, as a fiduciary must, with the plaintiffs. But the state court judge did not find, and neither do I, that such expansion has resulted in conversion of the breach of fiduciary duty claim into a federal fraud claim.

To be sure, it will be incumbent on the plaintiffs and trial court to make certain that the jury understands that plaintiffs' demand for punitive damages arises from defendants' breach of their fiduciary duty to inform plaintiffs fully and fairly about material facts following liquidation of their accounts. Care may have to be taken to make certain that no suggestion is made that fraud, as that term might be defined had a fraud count been plead, is being claimed. Rather, plaintiffs will be seeking compensation for losses caused by breaches of fiduciary duty, where those breaches allegedly consisted of different actions by the separate defendants on different occasions.

## Conclusion

I conclude, accordingly, that the notice of removal was timely. I also conclude, however, that plaintiffs have not converted their state claim into a federal fraud claim, as to which this court, under SLUSA, would have exclusive jurisdiction. There being no basis for federal jurisdiction, remand must be ordered.

It is, therefore,

ORDERED THAT plaintiffs' motion for remand be, and the same hereby is granted.

So ordered.