RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0082p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

ELLIOTT GRAISER,

> *Plaintiff-Appellee,*

v.

> No. 16-3167

VISIONWORKS OF AMERICA, INC.,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:15-cv-02306—James S. Gwin, District Judge.

Decided and Filed: April 6, 2016

Before: GUY, MOORE, and McKEAGUE, Circuit Judges.

_____

#### COUNSEL

_____

**ON BRIEF:** John B. Nalbandian, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, Ronald D. Holman, II, Michael J. Zbiegien, Jr., TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, for Appellant. Drew Legando, Jack Landskroner, LANDSKRONER GRIECO MERRIMAN, LLC, Cleveland, Ohio, for Appellee.

_____

#### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Visionworks of America, Inc. ("Visionworks") appeals from the district court's grant of Plaintiff-Appellee Elliott Graiser's motion to remand. Visionworks removed this case under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), claiming that the amount in controversy recently surpassed CAFA's jurisdictional threshold of $5,000,000. Graiser moved to remand, arguing

1

that Visionworks removed the case more than thirty days after it could have first ascertained that the case was removable, and thus Visionworks's removal was untimely under 28 U.S.C. § 1446(b)(3).  Determining whether removal was timely requires us to answer two questions of first impression in our Circuit.  First, what documents, if any, triggered § 1446(b)(3)'s thirty-day clock for removal under CAFA?  Second, does § 1446(b)(3) provide defendants with *one* thirty-day window for removability that begins once *any* ground for removal is discovered, or can a defendant remove upon ascertaining that CAFA jurisdiction exists, even if a thirty-day removal window has expired under a different theory of federal jurisdiction?  For the reasons discussed below, we hold that § 1446(b)'s thirty-day window for removal under CAFA is triggered when the defendant receives a document *from the plaintiff* from which it can first be ascertained that the case is removable under CAFA.  We also hold that the presence of CAFA jurisdiction provides defendants with a new window for removability, even if the case was originally removable under a different theory of federal jurisdiction.  Accordingly, the order of the district court is **VACATED** and this case is **REMANDED** back to the district court for further proceedings.

## I.  BACKGROUND

On April 30, 2014, Graiser, an Ohio citizen, saw a "Buy One, Get One Free" eyeglasses advertisement at the Beachwood, Ohio location of Visionworks, a Texas eye-care corporation operating in over forty states.  R. 1-3 (Am. Compl. at 2) (Page ID #232).  According to Graiser, upon entering the store and inquiring about the promotion, a Visionworks salesperson quoted Graiser "a price of $409.93 for eyeglasses, with a second eyeglasses 'free.'"  *Id.*  Alternatively, the salesperson told Graiser that he could purchase a single pair of eyeglasses for $245.95.  *Id.*  From this relatively simple factual background, we now confront two challenging procedural questions.

### A.  Graiser's First State-Court Complaint, Removal, and Remand

Graiser filed a proposed class-action complaint against Visionworks in the Court of Common Pleas of Cuyahoga County, Ohio on June 24, 2014.  R. 1-2 (Original Compl. at 1) (Page ID #10).  Graiser's complaint alleged that Visionworks's "Buy One, Get One Free"

promotion violated Ohio Administrative Code § 109:4-3-04 and the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*, because the price of the second pair of eyeglasses was not truly "free." *Id.* at 3–4 (Page ID #12–13). Graiser sought to represent a proposed class of "all consumers who (1) have purchased or who may yet purchase eyeglasses at a Visionworks store in Ohio or (2) have seen or may yet see an advertisement published by . . . Visionworks purporting to offer" the promotion. *Id.* at 6 (Page ID #14). Graiser requested only declaratory and injunctive relief, in addition to statutory attorney's fees. *Id.* at 10 (Page ID #18).

On July 25, 2014, Visionworks removed the case to the United States District Court for the Northern District of Ohio under diversity jurisdiction, 28 U.S.C. § 1332(a). R. 1-2 (07/25/14 Notice of Removal) (Page ID #49). According to Visionworks, the district court had original jurisdiction over the complaint because Graiser and Visionworks are citizens of different states and "Plaintiff seeks injunctive relief and attorneys' fees properly valued well in excess of $75,000." *Id.* at 2 (Page ID #50). Graiser moved to remand. Graiser argued that, under Article III of the United States Constitution, he lacked standing in federal court to seek injunctive relief. *See* R. 1-2 (01/20/15 D. Ct. Order at 3) (Page ID #60). The district court agreed, finding that "on the particular facts of this case, it does not appear that an injunction would remedy any cognizable future harm" to Graiser. *Id.* at 6 (Page ID #63). In remanding the case, the district court noted that "state courts are not bound by Article III's strictures," and thus Graiser's injunction claim "may still be viable in state court after remand." *Id.* at 8 (Page ID #65). The district court also recognized that "claims for damages could be viable in federal court if sufficient amounts were in controversy," though Graiser had "specifically disclaimed" monetary damages. *Id.*

Following remand, Visionworks filed a motion for judgment on the pleadings, arguing that Graiser also lacked standing to seek an injunction under state law. R. 1-2 (Mot. for J. on Pleadings at 1) (Page ID #151). The state court conditionally granted Visionworks's motion on April 9, 2015, but provided Graiser with fourteen days to amend his complaint. R. 1-3 (04/9/15 State Ct. Op. at 8) (Page ID #229).

**B. Graiser's Amended State-Court Complaint and Visionworks's Removal Under CAFA**

Graiser filed an Amended Complaint on April 23, 2015, adding requests for actual and punitive damages; Graiser also maintained his requests for statutory attorney's fees and "[d]eclaratory, equitable, and injunctive relief." R. 1-3 (Am. Compl. at 5) (Page ID #235). The Amended Complaint sought to certify a class of "[a]ll consumers who purchased eyeglasses from Visionworks in Ohio during a 'Buy One, Get One Free' promotion since June 24, 2012, but who did not receive any benefit of a truly-free offer." *Id.* at 3 (Page ID #233).

Graiser's lawyers sent a letter to Visionworks's lawyers on September 18, 2015, seeking "to open the door to class-wide settlement negotiations." R. 6-9 (9/18/15 Letter at 1) (Page ID #1099). The letter stated that Graiser's "theory of damages is that consumers who consummated a multiple-pair transaction during a 'buy one, get one free' promotion actually overpaid by 40%," and thus "these consumers should recover 40% of the prices paid." *Id.* The letter then applied this theory of damages to the sales figures that Visionworks provided in response to Graiser's first set of interrogatories, calculating that "the total damages as of Jan[uary] 31[, 2015] are $3,940,042." *Id.* at 1–2 (Page ID #1099–1100).

On September 28, 2015, counsel for Graiser requested "that Visionworks provide it with up-to-date sales figures" prior to participating in mediation. R. 11-1 (Zbiegien Decl. at 1) (Page ID #1143); *see also* R. 11-1 (9/28/15 Legando Letter) (Page ID #1145–46). Visionworks "compiled the specific sales information requested by counsel for Plaintiff, up to and including October 15, 2015, as the cut-off date," and sent this sales data to Graiser as "supplemental interrogatory answers." R. 11-1 (Zbiegien Decl. at 1–2) (Page ID #1143–44). According to Visionworks, it then applied Graiser's "proposed damage formula"—the formula sent by letter on September 18, 2015—to the October 15, 2015 sales data, and calculated that the "potential class's alleged damages were ascertained to be $5,011,005.60." *Id.* at 2 (Page ID #1144).[1]

Visionworks removed the case to the United States District Court for the Northern District of Ohio on November 10, 2015, asserting jurisdiction under CAFA. R. 1 (Notice of

---

[1]Visionworks presumably continued its "Buy One, Get One Free" promotional deal after the filing of the complaint; accordingly, the class—and the amount of damages—has grown during the litigation.

Removal at 1, 4) (Page ID #1, 4).  According to the Notice of Removal, "Visionworks was able to first ascertain that this case became removable after the receipt of the October 15, 2015 sales figures," and thus the Notice of Removal was timely filed within thirty days of ascertaining removability, as required by 28 U.S.C. § 1446(b)(3).  *Id.* at 4 (Page ID #4).

Graiser moved to remand on November 13, 2015, arguing that Visionworks's removal was untimely.  R. 6 (Mot. to Remand) (Page ID #1049).  According to Graiser, the Amended Complaint was removable under diversity jurisdiction, and thus the Notice of Removal—filed over six months later—was far outside of the thirty-day window.  *Id.* at 1–2 (Page ID #1049–50).  Moreover, Graiser claimed that Visionworks "sat upon the sales figures in its possession for months" and could have first ascertained removability under CAFA by applying its own sales figures earlier, particularly given that Graiser informed Visionworks on September 18th that, under January sales data, the damages were $3,940,042, and that this "figure would have to be brought current for sales" occurring afterwards.  *Id.* at 2, 9 (Page ID #1050, 1057).  Visionworks opposed Graiser's motion on December 17, 2015, R. 11 (Def. Opp. to Pl. Mot. to Remand) (Page ID #1117), and Graiser replied on January 4, 2016.  R. 12 (Pl. Reply to Opp. to Mot. to Remand) (Page ID #1155).

The district court granted Graiser's motion to remand on January 11, 2016.  R. 13 (01/11/16 D. Ct. Order) (Page ID #1168).  The district court noted that Graiser made "persuasive arguments" that the Amended Complaint was originally removable under diversity jurisdiction, and thus Visionworks should have removed within thirty days of the amended complaint.  *Id.* at 2–3 (Page ID #1169–70).  Moreover, the district court found that Visionworks "possessed its own sales data at the time the Amended Complaint was filed," and thus "was able to 'ascertain' CAFA jurisdiction" from the filing of the Amended Complaint or from Graiser submitting his September 18, 2015 damages formula.  *Id.* at 2 (Page ID #1169).  "Under either theory," the district court concluded, Visionworks's removal was untimely under § 1446(b)(3).  *Id.* at 3 (Page ID #1170).

Visionworks petitioned to appeal the district court's order of remand pursuant to 28 U.S.C. § 1453(c)(1), which provides courts of appeals discretion to review a district court's

grant or denial of a motion to remand a class action to state court.  We granted Visionworks's petition on February 25, 2016.  R. 17 (02/25/16 Sixth Cir. Order at 2) (Page ID #1179).**2**

## II. DISCUSSION

Visionworks contends on appeal that the district court erred in holding that its notice of removal was untimely filed.  We "review[] determinations of subject matter jurisdiction *de novo*," including a district court's order remanding a case to the state court from which it was removed.  *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007).

Visionworks removed this case under CAFA.  Congress enacted CAFA in 2005, "provid[ing] the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000,'" aggregating the claims of individual members of the proposed class.  *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  In removing under CAFA, the defendant "has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met."  *Smith*, 505 F.3d at 404 (internal quotation marks omitted).

Defendants removing under CAFA must comply with the time limits of the general removal statute, 28 U.S.C. § 1446, except that the one-year deadline for removing cases under diversity jurisdiction does not apply to cases removed under CAFA.  *See* 28 U.S.C. § 1453.  Section 1446(b) sets forth two thirty-day windows for removal.  *See* 28 U.S.C. § 1446(b)(1) & (3).  Under § 1446(b)(1), a defendant has thirty days to file a notice of removal "after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief."  However, "if the case stated by the initial pleading is not removable," § 1446(b)(3) provides that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Sections 1446(b)(1)

---

**2**We note that granting Visionworks's petition began a time window of our own.  Under 28 U.S.C. § 1453(c)(2), in accepting an appeal under § 1453(c)(1), a court of appeals "shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed."  Our sixty-day window began on February 25, 2016, when we granted Visionworks's petition.  *See In re Mortg. Elec. Registration Systems, Inc.*, 680 F.3d 849, 853 (6th Cir. 2012).  We have complied with this time limit.

and (b)(3) do not specify, however, what "information [] must be included in a plaintiff's initial pleading or other paper to trigger the 30-day periods . . . or how a defendant should 'ascertain' removability." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014).

This case requires us to address two important questions regarding the thirty-day windows of § 1446(b) in CAFA cases. First, we must determine what papers, if any, Visionworks "received" such that the thirty-day clock of § 1446(b)(3) began. Second, we must determine whether § 1446(b)(3) provides defendants with *one* thirty-day time period within which they must remove the action, even if the defendant later ascertains grounds for CAFA jurisdiction after an original thirty-day window has expired. We consider each of these questions in turn.

**A. When, If Ever, Did the 30-Day Removal Window <u>Begin</u> for Visionworks to Remove Under CAFA?**

Visionworks first contends that the district court erred in finding that it could have first ascertained that the case was removable under CAFA from the Amended Complaint or, alternatively, from Graiser's September 18, 2015 letter. We agree with Visionworks.

Our Circuit has not had the opportunity to consider when the thirty-day removal clock begins for a defendant seeking to remove under CAFA. Moreover, our published case law regarding the thirty-day removal clocks in non-CAFA cases is extremely limited. Accordingly, we take this opportunity to clarify when the thirty-day windows of § 1446(b) are triggered in CAFA cases.

Both parties rely on *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809 (6th Cir. June 26, 1991), as establishing the standard for determining when the thirty-day removal period began for Visionworks. *See* Appellant Br. at 13; Appellee Br. at 6. *Holston* involved a dispute over when the defendant first ascertained that the plaintiff's complaint stated a federal question—as opposed to a purely state-law claim—such that the removal window began to run. *Id.* at *2. Carolina Freight argued that, given the statutory language of § 1446(b), "the information establishing removal must come from a source outside of defendant's control." *Id.* Holston argued, by contrast, that the thirty-day period may begin "when a defendant has

information in its possession that would lead it to believe without speculation that the case is removable." *Id.* We agreed with Holston and held that the thirty-day period begins "running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within [the defendant's] own possession." *Id.* at *3. We noted that this reading was consistent with the term "received" in the statute, because even if a "defendant may have the papers in its possession as of the filing of the suit," a defendant "does not receive notice of the facts contained therein until it reviews those papers in connection with the suit." *Id.*

For several reasons, we respectfully disagree with *Holston*'s rule, and decline to follow it here. *Holston* is unpublished, and is accordingly not binding precedent. *See TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty, Ohio*, 430 F.3d 783, 789 (6th Cir. 2005). Moreover, *Holston* is not controlling because it did not involve removal under CAFA. This is significant because *Holston* explicitly grounded its holding in the principle that courts are to construe removal statutes "strictly" and ambiguities "must be resolved in favor of remand to the state courts." *Holston*, 1991 WL 112809, at *3. As the Supreme Court recently clarified, however, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Accordingly, the reasoning underlying *Holston*'s holding is not applicable here.[3]

*Holston*'s rule is also not administrable. Determining the date upon which a defendant ascertained removability through "receiving" necessary documents within its exclusive possession—documents that the defendant may have possessed from the beginning of litigation but only "reviewed" at a later point in time—requires guesswork and involves ambiguity. This case is illustrative. Visionworks argued in its Notice of Removal that the thirty-day clock began

---

[3]We have cited *Holston* in one published decision: *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015). *Berera* involved whether the defendant timely removed after determining that the plaintiff's state-law claim was really a federal claim "in disguise." *Id.* at 357. Thus, like *Holston*, *Berera* does not address the timeliness of removal under CAFA, where different policy concerns are in play, and we are not bound by *Berera* here. Moreover, *Berera* quoted *Holston* for the proposition that the thirty-day windows of § 1446(b) begin to run only when the defendant receives "solid and unambiguous information that the case is removable," which *Berera* recognized was "akin to actual notice." *Id.* at 364. *Berera* offered no discussion on the other questions that we confront today, such as from whom the defendant must receive the information or what duty, if any, the defendant has to review its own papers to ascertain removability, as discussed below.

only when it *reviewed* its up-to-date sales data during the course of litigation—presumably on a date after October 15th—and learned for the first time that the amount in controversy exceeded $5,000,000. R. 1 (Notice of Removal at 4) (Page ID #4). Further, according to Visionworks, the amount in controversy surpassed $5,000,000 at some time in October, and removing earlier would have required speculation. *See* R. 11 (Def. Opp. to Mot. to Remand at 9) (Page ID #1130). Graiser contended, however, that Visionworks had knowledge of its sales data and could have demonstrated by a preponderance of the evidence that the case was removable under CAFA at the time that Graiser filed his Amended Complaint or, at the latest, when Graiser sent his damages calculation on September 18, 2015. R. 6 (Mot. to Remand at 2, 9) (Page ID #1050, 1057). In determining whether Visionworks's removal was timely, the district court was saddled with "the unenviable task of determining [what] the defendant should have previously discovered" or did discover through the course of the litigation. *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 76 (1st Cir. 2014).

This absence of clarity is not beneficial to plaintiffs, defendants, or district courts. For this reason, "[e]very circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper" provided *by the plaintiff* to the defendant. *Id.* at 74 (internal quotation marks omitted). For example, in *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, the Second Circuit held "that, in CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained." 749 F.3d at 145. The plaintiffs' complaint in *Cutrone* did "not specifically enumerate either the expected number of class members . . . or the total amount of additional mortgage recording taxes paid by class members" as a result of the defendant's alleged wrongdoing. *Id.* at 140. Instead, the complaint set forth the amount of additional tax that the named plaintiffs paid—over six-thousand dollars—and "estimate[d] that the class includes 'hundreds, and likely thousands, of persons and entities.'" *Id.* After "examin[ing] its own records" and determining that the amount in controversy exceeded $5,000,000 "using a conservative estimate," the defendant removed the case "more than 90 days after the plaintiffs filed their initial complaint." *Id.* at 140–41. The district court granted the

plaintiff's motion to remand, finding that the complaint provided the defendant with enough information to determine CAFA removability at the time that it was filed. *Id.* at 141. The Second Circuit reversed, establishing a bright-line rule wherein the defendant is not required "to perform an independent investigation into a plaintiff's indeterminate allegations to determine removability" and, accordingly, when the thirty-day windows of § 1446(b) begin. *Id.* at 145.

This rule is substantially similar to the tests adopted by the First, Seventh, and Ninth Circuits. *See Romulus*, 770 F.3d at 75; *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140–41 (9th Cir. 2013). In adopting a bright-line rule, these circuits have each addressed the same important policy concerns. As explained by the First Circuit, "[i]n the absence of something like a bright-line approach, plaintiffs would have no incentive to specify estimated damages early in litigation," and thus "[d]efendants would protectively remove when faced with an indeterminate complaint in order to avoid missing" the removal window that may or may not have begun. *Romulus*, 770 F.3d at 75. Moreover, as discussed above, if a defendant seeks to remove under § 1446(b)(3) after the filing of the complaint, the district court would need to engage in the difficult and inefficient task of determining "what the defendant should have discovered" and when this discovery should have occurred. *Id.* at 75–76; *see also Cutrone*, 749 F.3d at 145. The more administrable task, these circuits have reasoned, is for the district court to "analyz[e] what was apparent on (or easily ascertainable from) the face of the plaintiff's pleadings" and other documents that the plaintiff has sent to the defendant. *See Romulus*, 770 F.3d at 76.

We find this reasoning persuasive. Accordingly, we join our sister circuits and hold that, in CAFA cases, the thirty-day clocks of § 1446(b) begin to run only when the defendant receives a document *from the plaintiff* from which the defendant can unambiguously ascertain CAFA jurisdiction. Under this bright-line rule, a defendant is not required to search its own business records or "perform an independent investigation into a plaintiff's indeterminate allegations to determine removability." *Cutrone*, 749 F.3d at 145. We agree with the Second Circuit, however, that a defendant *does* have a duty to "apply a reasonable amount of intelligence to its reading of a plaintiff's complaint" or other document. *Id.* For example, a defendant cannot prevent the beginning of the thirty-day window by refusing to "[m]ultiply[] figures clearly stated

in a complaint." *Kuxhausen*, 707 F.3d at 1140. But "[i]f removability is not apparent from the allegations of an initial pleading or subsequent document" sent from the plaintiff, the thirty-day clocks of § 1446(b) do not begin. *Cutrone*, 749 F.3d at 143.

Applying this rule here, we hold that the thirty-day window of § 1446(b)(3) never began for Visionworks to remove under CAFA. As the Ninth Circuit explained, "whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin." *Kuxhausen*, 707 F.3d at 1141 n.3. Here, the case became removable under CAFA once the amount in controversy exceeded $5,000,000 under Graiser's theory of damages. The *thirty-day clock* of § 1446(b)(3) never began in this case, however, because Graiser never served Visionworks a pleading or "other paper" from which Visionworks could unambiguously ascertain that CAFA jurisdiction existed. Graiser's Amended Complaint did not state the number of individuals in the proposed class, nor did it set forth Graiser's theory of damages. *See generally* R. 1-3 (Am. Compl.) (Page ID #231–36). And although Graiser submitted his damages theory to Visionworks in a letter on September 18, 2015, this letter applied the damages calculation to sales figures through January 31 and concluded that the amount in controversy was $3,940,042. R. 6-9 (9/28/15 Legando Letter at 1–2) (Page ID #1099–1100). This did not provide Visionworks with sufficient information from which it could ascertain CAFA removability. Certainly, Visionworks could have "ma[d]e extrapolations or engage[d] in guesswork" after receiving these documents, *Kuxhausen*, 707 F.3d at 1140, and Visionworks could have investigated its own records to determine whether the case was removable under up-to-date sales figures. But Visionworks did not have a duty to do so. *See id.* Because Graiser has not identified a document that it sent Visionworks from which Visionworks could ascertain that the case was clearly removable under CAFA, the thirty-day window of § 1446(b)(3) did not begin. Outside of § 1446(b)(3)'s thirty-day window, Visionworks was free to conduct its own investigation and remove the case. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Visionworks did so here, and its notice of removal was timely.

We are mindful of the concern that, under this rule, a defendant could ignore information in its possession that supports removability, and—with no removal clock ticking—delay

litigation in state court unless and until the federal forum proves more desirable. *See Roth*, 720 F.3d at 1126. Indeed, Graiser warns of these tactics here. Appellant Br. at 18–19. As the Ninth Circuit reasoned, however, "plaintiffs are in a position to protect themselves" from this possibility. *Roth*, 720 F.3d at 1126. "If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Id.* Once a plaintiff has done so, "§ 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff." *Id.* at 1125. Moreover, as the Second Circuit noted, "in most cases, defendants will likely remove as soon as the existence of federal jurisdictional predicates becomes apparent." *Cutrone*, 749 F.3d at 147. Accordingly, the bright-line approach provides both sides with tools to prevent "'gamesmanship'" over federal jurisdiction. *See id.*

**B.    Could Visionworks Remove Under CAFA Jurisdiction Even if the Thirty-Day Window to Remove Under a Different Theory of Federal Jurisdiction Had Expired?**

Having determined that § 1446(b)(3)'s window was not triggered for purposes of CAFA jurisdiction, we must answer an additional question of first impression in order to resolve this case. In granting Graiser's motion to remand, the district court also noted that Graiser persuasively argued that "from the time of the April 2015 Amended Complaint, [Visionworks] could have alternatively sought removal under diversity jurisdiction." R. 13 (01/11/16 D. Ct. Order at 2–3) (Page ID #1169–70). Under this theory, Visionworks's November 2015 removal was untimely because a single thirty-day window of removability began at the time that the Amended Complaint was filed, even if Visionworks ascertained that jurisdiction existed under CAFA at a later point in time. *See* Appellee Br. at 11.

On appeal, Visionworks argues that, even if the Amended Complaint were originally removable under diversity jurisdiction, the presence of an earlier ground for removal "has no bearing on the timeliness of . . . CAFA removal." Appellant Br. at 25–26. In support of this argument, Visionworks relies on the Ninth Circuit's recent decision in *Jordan v. Nationstar Mortgage LLC*, which held that "a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading,

document, motion, order, or other paper revealed an alternative basis for federal jurisdiction." 781 F.3d 1178, 1180 (9th Cir. 2015); *see* Appellant Br. at 24. *Jordan* extended to CAFA a rule that the Ninth Circuit previously recognized in the context of the federal-officer removal statute, 28 U.S.C. § 1442(a). In *Durham v. Lockheed Martin Corp.*, the Ninth Circuit stated that "a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal." 445 F.3d 1247, 1253 (9th Cir. 2006). This reasoning was grounded, in part, on the policies that motivated Congress to pass § 1442—protecting federal officers from inhospitable state forums—and the Supreme Court's subsequent mandate that the federal officer statute should be "liberally construed" in favor of these policies. *Id.* at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). In extending the *Durham* rule to CAFA, the Ninth Circuit in *Jordan* recognized the Supreme Court's language in *Dart Cherokee* "that no antiremoval presumption attends cases involving CAFA." *Jordan*, 781 F.3d at 1183 (quoting *Dart Cherokee*, 135 S. Ct. at 554).

We are persuaded by the Ninth Circuit's reasoning. Federal jurisdiction under CAFA, like federal jurisdiction over federal officers, serves different policy purposes than federal jurisdiction over ordinary diversity cases or cases arising under federal-question jurisdiction. Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 135 S. Ct. at 554. A defendant may choose to litigate a case in state court even if diversity jurisdiction exists, believing that the state is nonetheless an hospitable forum; this same defendant may make a different calculation if later developments show that the case is a CAFA class action. Because Congress clearly "intended [CAFA] to expand substantially federal court jurisdiction over class actions" and directed that CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant," S. Rep. 109-14, at 43 (2005), we read § 1446(b) as permitting defendants to make this choice.

Accordingly, we hold that once a defendant ascertains that a case is removable under CAFA, a defendant may remove the case—within the time constraints of § 1446(b)(1) and (b)(3) discussed above—even if the case was originally removable under a different theory of federal

jurisdiction. Thus, even if the Amended Complaint triggered the thirty-day window of § 1446(b)(3) for purposes of diversity jurisdiction, a contested issue that we do not decide, this did not bar Visionworks from timely removing under CAFA. And, as discussed above, Visionworks's removal under CAFA was timely as the thirty-day clock had not yet begun to run. The district court therefore erred in granting Graiser's motion to remand.

## III.  CONCLUSION

For the foregoing reasons, we **VACATE** the district court's order remanding the case to state court and we **REMAND** back to the district court for further proceedings.