# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-8012
_____

Carla Gibson; Windel Lawson; Joyce Powell; Jeff Rogers; Kathy Wood; Lillie Woods

*Respondent*s

v.

Clean Harbors Environmental Services, Inc.

*Petitioner*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: August 4, 2016
Filed: October 24, 2016

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The district court granted respondents' motion to remand their putative class-action complaint to state court, holding that petitioner's motion to remove the action to federal court was untimely filed. We grant petitioner's petition for permission to appeal, reverse the district court's judgment, and remand the case to the district court for further proceedings.

I. Background

Respondents Carla Gibson, Windel Lawson, Joyce Powell, Jeff Rogers, Kathy Wood, and Lillie Woods filed their class-action complaint in the Circuit Court of Union County, Arkansas, in January 2013, amending their complaint in February 2013 to name petitioner Clean Harbors Environmental Services, Inc. (Clean Harbors) as the proper defendant. Respondents alleged state tort claims related to a chemical release from a hazardous waste storage and treatment facility operated by Clean Harbors in El Dorado, Arkansas. The complaint stated that the "exact number of class members [was] unknown," but that "as many as 400 persons (and perhaps more)" may have been affected by Clean Harbors's chemical release. With respect to the amount in controversy, respondents stipulated that "[n]o plaintiff's or class member's individual claim [was] equal to or greater than" $75,000; that the "total damages of the plaintiffs and the class . . . [did] not exceed" $5,000,000; and thus that the federal courts had "neither diversity nor Class Action Fairness Act jurisdiction" over the case.[1]

The case proceeded in state court, and on March 11, 2016, Clean Harbors received a letter from respondents' counsel (the March 11 letter) that "recommend[ed] a total payment of $6,500,000 to resolve" the case and asserting the following basis for the settlement recommendation:

> [C]ounsel for plaintiffs received contact from almost 2,100 individuals [affected by the chemical release] within a short time of the occurrence.

---

[1]Respondents filed their complaint before the U.S. Supreme Court issued its March 19, 2013, opinion in Standard Fire Insurance Co. v. Knowles, 133 S. Ct. 1345, 1347 (2013), in which the Court held that a class-action plaintiff cannot prevent removal to federal court under the Class Action Fairness Act of 2005 (CAFA) by stipulating, prior to class certification, that he and the class will not seek damages in excess of CAFA's $5,000,000 jurisdictional limit. Knowles abrogated our February 2, 2012, holding to the contrary in Rolwing v. Nestle Holdings, Inc., 666 F.3d 1069, 1072-73 (8th Cir. 2012).

* * *

The area defined in plaintiffs' class certification motion contains an estimated 5,653 total residents. This does not account for those who were present in the impact area for work or other reasons. If we estimate another 500 class members for this latter group, we are dealing with over 6,000 potential claims. Defendant's expert has suggested the area of impact to be smaller than plaintiffs believe it is. However, given the number of contacts that were received from those present in the area of impact and the consistency of the experiences they related, we believe the number of valid claims will be closer to 6,000. If this many claims are presented, then the average amount paid would be right at $700 (after deduction for fees and costs). However, even if this estimate is high and there are 5,000 claims presented, the average amount paid per claim (again after deduction for fees and costs) in this case would be less than $850 per claim. Again, given the reaction people experienced from being exposed to a more severe irritant, we do not believe this amount to be excessive.

On April 21, 2016, Clean Harbors received respondents' expert report, which set forth the scientific methodology on which respondents based their determination of the geographical area allegedly affected by the chemical release.

Clean Harbors removed the case to the United States District Court for the Western District of Arkansas on May 9, 2016, citing the Class Action Fairness Act of 2005 (CAFA), under which a federal district court has jurisdiction to hear a class action if, among other requirements, the class exceeds one hundred members and the amount in controversy exceeds $5,000,000 in the aggregate. 28 U.S.C. § 1332(d)(2), (d)(5)(B); see also id. § 1453(b) (noting that a class action may be removed by a defendant to federal court "in accordance with" the removal provisions set forth in 28 U.S.C. § 1446). If the case as pled in the initial complaint satisfies CAFA's jurisdictional requirements, 28 U.S.C. § 1446(b)(1) requires that the defendant remove the case within thirty days after receiving a copy of the complaint. If, on the other hand, the case as pled in the initial complaint does not satisfy CAFA's jurisdictional

-3-

requirements, 28 U.S.C. § 1446(b)(3) requires that the defendant remove the case within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Clean Harbors's notice of removal argued that neither the initial complaint nor the March 11 letter set forth a basis for removal because the allegations in those documents concerning the number of class members and the associated amount in controversy had been "based on unscientific and subjective information compiled by respondents' counsel's staff" from phone calls to counsel by individuals allegedly affected by the chemical release and "inquiring about filing suit." Thus, according to Clean Harbors, its notice of removal was timely because it was filed within thirty days after its April 21, 2016, receipt of the expert report, which constituted the "other paper" from which it could "first be ascertained that the case [was] one which . . . ha[d] become removable" under CAFA. See id. § 1446(b)(3).

Respondents filed a motion to remand, arguing that Clean Harbors's notice of removal was untimely because it was filed more than thirty days after Clean Harbors received the March 11 letter, which respondents argued constituted "other paper" under § 1446(b)(3). Respondents pointed to counsel's statement in the letter that it "recommends a total payment of $6,500,000 to resolve" the case, a sum exceeding CAFA's $5,000,000 amount-in-controversy requirement. Respondents also pointed to the passage quoted at length above because it set forth the number of claimants and the average sum to be awarded to each claimant, which, they argued, provided the basis for counsel's settlement recommendation. Thus, respondents argued, Clean Harbors's attempted May 9, 2016, removal was untimely, requiring that the case be remanded to state court.

The district court, adopting the report and recommendation of the magistrate judge, agreed with respondents and concluded that Clean Harbors's removal was

untimely under § 1446(b)(3) because it occurred more than thirty days after Clean Harbors received the March 11 letter, which "provided the information necessary for [Clean Harbors] to determine that this matter was removable under CAFA."

Clean Harbors then filed a timely petition for permission to appeal the district court's remand order under 28 U.S.C. § 1453(c)(1), which confers discretion on courts of appeals to review an order "granting or denying a motion to remand a class action to the State court from which it was removed if application [to appeal] is made . . . not more than 10 days after entry of the [remand] order." Clean Harbors argues, as it did in the district court, that the removal period did not begin to run until Clean Harbors's April 21 receipt of respondents' expert report, from which it could first ascertain that the case had become removable under CAFA. According to Clean Harbors, the March 11 letter did not constitute "other paper" from which it could ascertain that the case was removable because the letter was speculative, did not provide objective evidence indicating with the requisite degree of specificity that the case was removable, "was an outline without scientific support or evidence, and [stated] arbitrary dollar amounts with no itemization." Thus, Clean Harbors argues, the district court erred in concluding that removal was untimely and in remanding the case to state court. We now grant the petition for permission to appeal to consider whether, in the CAFA context, the letter or the expert report constituted "other paper" sufficient to trigger the thirty-day removal period under § 1446(b)(3) and whether Clean Harbors's removal was timely.

## II. Discussion

The question before us is the standard to be applied in determining when the § 1446(b)(3) thirty-day removal period is triggered with respect to CAFA cases and whether, applying that standard, Clean Harbors's removal was timely. We hold that, in the CAFA context, the thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading,

motion, order, or other paper "from which the defendant can unambiguously ascertain" that the CAFA jurisdictional requirements have been satisfied. Graiser v. Visionworks of Am., Inc., 819 F.3d 277, 285 (6th Cir. 2016). Although a defendant has a duty to "apply a reasonable amount of intelligence to its reading" of any such document received from the plaintiff, a defendant has no duty "to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability.'" Id. (quoting Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 145 (2d Cir. 2014)). "If removability is not apparent from the allegations of . . . [such] document sent from the plaintiff," § 1446(b)(3)'s thirty-day time period does not begin to run. Cutrone, 749 F.3d at 143.

This approach is consistent with the "bright-line approach" adopted by the other circuit courts that have considered the issue, each of which, in determining whether the thirty-day removal period has been triggered, has limited the inquiry to the contents of the "amended pleading, motion, order or other paper" provided by the plaintiff, and has required that the relevant document set forth a sufficiently detailed and unequivocal statement from which the defendant may unambiguously ascertain that the CAFA jurisdictional requirements have been satisfied. See Graiser, 819 F.3d at 285 (holding in CAFA case that § 1446(b)(3) time period begins to run when the plaintiff serves the defendant with a document "from which the defendant can unambiguously ascertain CAFA jurisdiction"; the defendant need not "search its own business records or perform an independent investigation" to determine removability (citation omitted)); Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 75 (1st Cir. 2014) (holding in CAFA case that § 1446(b) time periods begin to run "if plaintiff's paper includes a clear statement of the damages sought or . . . sets forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation"; the defendant has no duty to investigate or supply facts outside the plaintiff's paper); Cutrone, 749 F.3d at 145 (holding in CAFA case that § 1446(b) time periods begin to run when the plaintiff serves the defendant with "an initial pleading or other document that explicitly specifies the amount of monetary damages

sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained"; although the defendant must use a "reasonable amount of intelligence" to read the plaintiff's documents, an "independent investigation into a plaintiff's indeterminate allegations" is not required (citation omitted)); Walker v. Trailer Transit, Inc., 727 F.3d 819, 824 (7th Cir. 2013) (holding in CAFA case that § 1446(b)(3) time period begins to run when the defendant receives "other paper that affirmatively and unambiguously reveals that the predicates for removal are present"; other paper must "specifically disclose the amount of monetary damages" for amount-in-controversy inquiry); cf. In re Willis, 228 F.3d 896, 897 (8th Cir. 2000) (holding in non-CAFA case that § 1446(b) time period begins to run upon a defendant's receipt of the initial complaint only if the complaint "explicitly discloses [that] the plaintiff is seeking damages in excess of the federal jurisdictional amount").

This approach strikes the appropriate balance between competing interests: it discourages the use of indeterminate allegations by plaintiffs in their filings and other papers, and it eliminates the incentive for defendants to file protective removals. In the absence of such an approach, "plaintiffs would have no incentive to specify estimated damages early in litigation," and "[d]efendants would protectively remove when faced with an indeterminate complaint [or other paper] in order to avoid missing the mandatory window for removal." Romulus, 770 F.3d at 75. Such an approach also eliminates the need for courts to "expend[] copious time determining what a defendant should have known or have been able to ascertain at the time" that it received the amended pleading, motion, order, or other paper from the plaintiff. Cutrone, 749 F.3d at 145 (quoting Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 399 (5th Cir. 2013)); cf. Willis, 228 F.3d at 897 (noting that requirement for "explicit[] disclos[ure]" of federal jurisdictional damages amount "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may [have] subjectively know[n] . . . . and prevents a plaintiff from disguising the amount of damages until after the thirty-day time limit has run to avoid removal" (citation omitted)).

Respondents contend that the approach taken here and in other circuits encourages gamesmanship and delay by defendants. But we agree with the Second Circuit that this approach addresses "the uncertainties faced by defendants in determining removability" and allows courts to avoid unnecessary and time-consuming inquiries into determining what a defendant should have known or should have been able to ascertain when it received plaintiff's amended pleading, motion, order, or other paper. Cutrone, 749 F.3d at 145; see also Graiser, 819 F.3d at 284-85; Romulus, 770 F.3d at 75. This bright-line approach "promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." Walker, 727 F.3d at 824.

Applying this approach to the matter at hand, we conclude that Clean Harbors's removal was timely. We have acknowledged that a settlement letter or similar correspondence from the plaintiff to the defendant may constitute "other paper" for purposes of § 1446(b)(3). In Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 969 (8th Cir. 2007), we observed that "courts have interpreted the 'other paper' term in § 1446(b) to apply to papers and documents involved in the case being removed," citing Addo v. Globe Life & Accident Insurance Co., 230 F.3d 759, 761-62 (5th Cir. 2000), in which a post-complaint demand letter seeking damages in excess of the federal jurisdictional amount was "other paper" sufficient to trigger the thirty-day removal period. In a similar vein, in Atwell v. Boston Scientific Corp., 740 F.3d 1160, 1162 (8th Cir. 2015), we held that oral statements made at a court hearing and later transcribed constituted "other paper" for purposes of § 1446(b)(3).

Such a document will qualify as "other paper" sufficient to trigger § 1446(b)(3)'s thirty-day removal period, however, only if it is the first such document from which the defendant can unambiguously ascertain that the CAFA jurisdictional requirements have been satisfied and thus determine that the case is removable. Accordingly, we disagree with the district court's conclusion that the

March 11 letter "provided the information needed for [Clean Harbors] to determine that this matter was removable under CAFA" and that Clean Harbors's notice of removal was thus untimely, for at most, counsel "recommended" that a total payment in the amount of $6,500,000 would "resolve this matter." The letter did not specifically and unambiguously state, however, that respondents were now seeking to recover that amount in damages or that they would definitively and finally settle the matter for the recommended sum. The letter also stated that the geographical area affected by the chemical release contained "5,653 total residents" and "over 6,000 potential claims," although counsel had only "received contact from . . . 2,100 individuals." The letter asserted that "even if [the] estimate [of 6,000 claims] is high and there are 5,000 claims," counsel did not believe that the recommended settlement amount was "excessive." Nowhere did respondents' counsel offer factual support for these shifting class-size allegations, other than to suggest that, once notice of the class action was provided to the community surrounding Clean Harbors's facility, thousands of nearby residents and other allegedly affected individuals might attempt to join the class.

Notably, the "recommended" resolution amount was based on a per individual award of either $700 or $850, depending on the various class sizes suggested in the letter, none of which were supported by scientific evidence. Thus, even by application of a simple calculation, it was not possible for Clean Harbors to ascertain from this letter that CAFA's amount-in-controversy requirement had been satisfied. Indeed, setting aside counsel's unsupported and shifting class-size estimates, the number of potential class members who had actually contacted counsel multiplied by the suggested per-individual dollar amounts suggested in the letter yields $1,470,000 (2,100 x $700) and $1,785,000 (2,100 x $850), respectively, totals that are both well below CAFA's $5,000,000 amount-in-controversy requirement. On the whole, the letter did not provide the necessary detail and clarity from which Clean Harbors could unambiguously ascertain that CAFA's class-size and amount-in-controversy jurisdictional requirements had been satisfied and that the case had become

removable, and thus it did not constitute "other paper" sufficient to trigger § 1446(b)(3)'s thirty-day removal period.

We next consider whether respondents' expert report constituted "other paper" from which Clean Harbors could first unambiguously ascertain that CAFA's jurisdictional requirements had been satisfied such that § 1446(b)(3)'s thirty-day removal period was triggered. The affidavit and report of respondents' expert witness first set forth respondents' theory of damages and class size, namely, that the only method for determining the area impacted by the chemical release was to interview area residents and witnesses, determine who perceived the vapor, and use that information to plot the geographical boundaries of the impact area. Although Clean Harbors disputed its methodology and admissibility under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the expert report represented respondents' first objective, scientifically based analysis of the area allegedly affected by the chemical release, information from which Clean Harbors could then determine the number of class members and the associated amount of damages with the requisite degree of specificity and accuracy. Thus, § 1446(b)(3)'s thirty-day removal period began to run only upon Clean Harbors's receipt of the report, rendering Clean Harbors's May 9, 2016, notice of removal timely.

The petition for permission to appeal is granted, the district court's order remanding the case to state court is vacated, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

MURPHY, Circuit Judge, dissenting.

Because the majority has misapplied the standard for deciding when the removal clock begins to run under 28 U.S.C. § 1446(b)(3), I dissent. A prerequisite to federal jurisdiction under the Class Action Fairness Act (CAFA) is that the aggregate amount in controversy exceed $5,000,000. 28 U.S.C. § 1332(d)(2). If a complaint does not meet this CAFA jurisdictional requirement at the outset, but a defendant later receives "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable," that defendant has thirty days in which to remove the case. 28 U.S.C. §1446(b)(3).

CAFA does not specify what information must be included to trigger the thirty day clock "or how a defendant should 'ascertain' removability." Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 142 (2d Cir. 2014). Here, the majority concludes that the CAFA thirty day removal period "does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper 'from which the defendant can unambiguously ascertain' that the CAFA jurisdictional requirements have been satisfied." (quoting Graiser v. Visionworks of Am., Inc., 819 F.3d 277, 285 (6th Cir. 2016)).

The majority concludes that plaintiffs' March 11, 2016 letter did not unambiguously state that they were seeking more than $5,000,000 in damages by recommending "a total payment of $6,500,000 to resolve th[e] matter," but this letter clearly indicates that plaintiffs were seeking damages in excess of the jurisdictional amount. The majority overlooks the first statement in plaintiffs letter when it concludes that the letter did not indicate that plaintiffs "would definitively and finally settle the matter for the recommended sum." Plaintiffs wrote, "as requested, this letter constitutes plaintiffs' settlement demand."

-11-

Disregard of an explicit settlement demand makes it harder for parties to determine when the thirty day clock starts and undermines the goals of "promot[ing] certainty and judicial efficiency." See In re Willis, 228 F.3d 896, 897 (8th Cir. 2000) (quoting Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir.1992)).  Since plaintiffs unambiguously sought damages in excess of CAFA's jurisdictional amount in their March 11 letter, the district court's order remanding this case to state court should be affirmed.

_____