FILED
United States Court of Appeals
Tenth Circuit

October 10, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JEFFREY LITTLE, individually and on behalf of all similarly situated persons,

Plaintiff - Appellee,

v.

WENDY'S INTERNATIONAL, LLC,

Defendant - Appellant.

No. 24-1232
(D.C. No. 1:23-CV-03056-MEH)
(D. Colo.)

_____

## ORDER AND JUDGMENT*
_____

Before **HOLMES**, Chief Judge, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Seeking unpaid wages for himself and other class members, Jeffrey Little filed a putative class action against Wendy's International, LLC (Wendy's) in Colorado state court. Wendy's removed the action to federal court, relying on the removal provisions of the Class Action Fairness Act (CAFA). *See* 28 U.S.C. §§ 1332(d), 1453(b), 1446. The district court held, however, that Wendy's had failed to file its

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal motion within the applicable 30-day removal period. It therefore granted

Mr. Little's motion to remand the action to state court.

We granted Wendy's motion for permission to appeal the remand order. *See*

28 U.S.C. § 1453(c)(1). We now affirm the district court's order remanding this

action to state court.

I.

Mr. Little filed his class action in Colorado state court in October 2020. In his

first amended complaint, filed January 19, 2021, he asserted that Wendy's had

violated the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 to -125, and the

Colorado Minimum Wage Act, *id.* §§ 8-6-101 to -120, by failing to ensure that its

employees received all required meal and rest breaks during their shifts.[1] The

complaint sought certification of a class defined as "[a]ll citizens of Colorado who

worked as hourly employees for [Wendy's] in Colorado within the statute of

limitations." Aplt. App., vol. I at 38 (capitalization and emphasis omitted). It

asserted that class members were entitled to treble damages, and it requested

compensatory damages, attorney's fees and litigation expenses, pre- and

post-judgment interest, and statutory penalties.

The case proceeded in state court. On May 12, 2022, Mr. Little filed a motion

for class certification. Wendy's opposed the motion. The state district court stayed

---

[1] The complaint also alleged civil theft under Colo. Rev. Stat. § 18-4-405.

2

class certification proceedings pending the outcome of two potentially informative Colorado appellate court cases.

While the motion for class certification remained pending, Mr. Little's counsel sent Wendy's counsel two letters, each titled "Demand for Unpaid Wages." The first letter, dated January 9, 2023, read:

> Pursuant to C.R.S. § 8-4-109, demand is made for payment of wages in the amount of $5,930,118.70 on behalf of Jeffrey Little and all current and former hourly employees who worked for Wendy's International, LLC in Colorado from October 25, 2014 to January 9, 2023.
>
> Please forward payment to [Mr. Little's attorney].

Aplt. App., vol. II at 317.

The second letter, dated January 19, 2023, contained similar language but demanded a different amount and specifically denied that it constituted a settlement offer:

> Pursuant to C.R.S. § 8-4-109, Jeffrey Little, and designated representative attorneys Alexander Hood and Brian D. Gonzales, hereby demand payment of wages in the amount of $5,100,000.00 for Mr. Little and all current and former hourly employees who worked for Wendy's International, LLC in its Colorado Wendy's restaurants from October 25, 2017 to January 19, 2023. Please note that this is a statutory demand for payment of wages or compensation, not an offer to settle the pending lawsuit. Moreover, the amount demanded is only unpaid wages or compensation under the Colorado Wage Claim Act. It does not include other amounts, including (1) attorney's fees or (2) damages or penalties that may be recoverable under any other statute or common law claim.
>
> Please forward payment to [Mr. Little's attorney].

3

Aplt. App., vol. II at 318.[2]

On October 31, 2023, the state court granted Mr. Little's class certification motion and conditionally certified a class consisting of "all current and former non-exempt employees who worked for [Wendy's] in Colorado from October 25, 2014 to the present." *Id.* at 301 (capitalization and emphasis omitted).

On November 17, 2023, about two and a half weeks after the certification order was entered—and over three years after Mr. Little filed his complaint in state court—Wendy's filed a notice of removal, invoking CAFA to remove the case to federal court. Ten days later, on November 27, 2023, Wendy's filed an amended notice of removal.

The CAFA provisions on which Wendy's relied "permit[] a class action to be brought in or removed to federal court if the proposed classes include at least 100 persons with claims, the aggregate amount in controversy on all claims exceeds $5 million, at least one proposed plaintiff and one defendant have diverse citizenship, and the primary defendants are not governmental entities or officials against whom a federal court cannot order relief." *Speed v. JMA Energy Co.*, 872 F.3d 1122, 1126 (10th Cir. 2017). Under CAFA, a defendant must generally remove the case (1) within 30 days of its receipt of an initial complaint showing that CAFA's jurisdictional requirements are met, *see* 28 U.S.C. § 1446(b)(1), or (2) if the case as

---

[2] Mr. Little explains that his "first demand covered a 6-year statute of limitations, rather than a 3-year statute of limitations," and he "amended his demand out of an abundance of caution because of uncertainty surrounding the applicable statute of limitations under the Colorado Minimum Wage Act." Aplee. Br. at 4 n.3.

pled in the initial complaint does not show those requirements have been satisfied, within 30 days of its receipt of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," *id.* § 1446(b)(3).

Wendy's averred that CAFA's jurisdictional requirements were met, stating that (1) it had "operated approximately 40 restaurants in Colorado with over 16,000 non-exempt restaurant employees between October 25, 2014 and October 25, 2020," *id.* vol. I at A14, A61; (2) based on its business records, Wendy's had determined that the amount in controversy "would total approximately $3,991,680," *id.* at 16, 63, which, when added to statutory penalties and attorney's fees, would exceed CAFA's threshold of $5 million, *id.* at 15-16, 62-63; and (3) the parties were minimally diverse, because Wendy's was an Ohio citizen and Mr. Little was a citizen of Colorado.

Wendy's also stated that its notice of removal was timely. It argued Mr. Little's original and amended state-court complaints had not triggered CAFA's 30-day removal period because they were "silent as to both the size of the proposed class and the amount of damages owed to each employee." *Id.* at A20. In the amended notice, it added that Mr. Little's later demands for unpaid wages had also not triggered the 30-day removal period because the demands did not constitute an "other paper" from which Wendy's could have ascertained that the case was removable. *Id.* at 67 (internal quotation marks omitted). Wendy's argued that the removal period had begun instead when, prompted by the district court's certification

5

order, Wendy's conducted its own investigation that showed the requirements for removal were met. *See, e.g.*, *Cutrone v. Mortg. Elec. Registration Sys.*, 749 F.3d 137, 147 (2d Cir. 2014) (where the 30-day removal clock under § 1446(b) has not been triggered, a defendant may timely remove based on its own investigation); *see generally Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1271 n.5 (10th Cir. 2016) ("[A] defendant need not await . . . unambiguous notice before filing a notice of removal. Once it reasonably believes that the jurisdictional prerequisites have been satisfied, it can properly seek removal."). And, according to Wendy's, its notice of removal was timely based on its own investigation.

Mr. Little filed a motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c). He did not contest Wendy's argument that his initial complaint had not triggered the 30-day removal period. But he argued his demands for unpaid wages in January 2023 were "other papers" under § 1446(b)(3) that had made Wendy's aware that the requirements for removal were met and therefore started the 30-day removal clock. Wendy's notice of removal filed in November 2023 thus came long after the 30-day removal period expired and was untimely.

The district court granted the motion to remand. It determined that "in the context of the totality of circumstances in this case," including the allegations of Mr. Little's class action complaint and "the knowledge [Wendy's] had of its Colorado workforce," the demand letters had reflected "a reasonable estimate of the claim" that triggered the removal deadline. Aplt. App., vol. II at 440-41. The district court explained that "in light of a six-year damages time period and obvious scope of

6

the proposed class, an amount of $5 million is not an idle or inflated number." *Id.* at

441.  It reasoned:

> Indeed, $5 million spread over 26,000 persons [sic] is under $200.00 per
> class member.  The factual allegations in the 2020 Class Action Complaint,
> combined with the class discovery that occurred in the state case, and the
> 2023 demand letters, were sufficient, in combination, to clearly determine
> the number of employees or the amount that each employee might
> claim. . . .  Plaintiff proffers that the discovery that occurred in this case
> established, by 2021, that Defendant operated at least forty stores in
> Colorado, and each store had approximately twenty employees at any one
> moment.  In the context of the fast food business, it would defy common
> sense not to recognize there is a high turnover rate. . . .  It is not guesswork
> to calculate that the potential class is in the thousands, even with the limited
> information in the record in 2021.  Moreover, Defendant was obviously in a
> position to know the scope of its own business, including the volume of
> W-2 wage statements it issues yearly.  Finally, the fact that Plaintiff sent
> *two* letters, and both alleged that the wage damage was over $5 million, is
> additional evidence establishing the clear and unequivocal standard.

*Id.* at 441-42 (citation and internal quotation marks omitted).

Under all these circumstances, the court concluded, Wendy's had "clear and

unequivocal notice that the right to remove existed in January 2023 and thus, on

November 17, 2023, [it] filed an untimely Notice of Removal."  *Id.* at 442.

II.

We review de novo the district court's interpretation of CAFA.  *See Woods v.

Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014).  We review its factual

findings for clear error.  *See Speed*, 872 F.3d at 1128.

III.

Under CAFA, "[a] class action may be removed to a district court of the

United States in accordance with [28 U.S.C. §] 1446."  28 U.S.C. § 1453(b).  Section

1446, which establishes the time limits for filing a notice of removal, requires that the notice be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

Wendy's has conceded that even before it received the January 2023 letters it could have ascertained that two of CAFA's jurisdictional requirements were met: minimal diversity and numerosity. *See* Aplt. App., vol. II at 387 n.1. We are therefore only concerned with a third requirement: whether, more than 30 days prior to its November 17, 2023, notice of removal, Wendy's had notice that the amount in controversy exceeded $5 million. Mr. Little contends the demand letters provided such notice.

To trigger the running of the filing period, the demand letters had to be an "other paper" from which Wendy's could ascertain that the case was removable. Section 1446(b)(3) provides examples of documents beyond the initial complaint that can provide such notice to a defendant. Although the examples the statute supplies are court pleadings or orders, we have construed the "other paper" requirement broadly. It seems clear that a demand letter from counsel may qualify. *See Paros*, 835 F.3d at 1271 ("A written demand from counsel may be an 'other paper' under

8

§ 1446(b)(3) 'from which it may first be ascertained that the case is one which is or has become removable.'").

Wendy's arguments therefore primarily focus on the second requirement: whether the demand letters provided it with adequate notice of the amount in controversy. As Wendy's notes, this court "has been very strict in assessing whether the grounds for removal are ascertainable." *Paros*, 835 F.3d at 1269. To start the removal clock, the plaintiff must "provide[] the defendant with clear and unequivocal notice that the suit is removable." *Id.* (internal quotation marks omitted). This can include a "specific allegation that damages exceed the federal jurisdictional amount," *id.*, but also "facts from which the amount may be easily derived through arithmetic" by a reasonable amount of intelligence, but in such a case, the amount must be "unambiguous," *id.* at 1269 n.4.

Here, each of the demand letters facially specified a precise amount in excess of $5 million. But Wendy's argues they did not provide the clear and unequivocal notice required, for several reasons. First, Wendy's contends the letters "contained neither a factual basis for the demands nor supporting calculations," and therefore failed to provide a "facially reasonable estimate of [Mr. Little's] claims." Aplt. Opening Br. at 16, 18. Second, the letters did not provide clear and unequivocal notice because they "did not purport to be settlement offers." *Id.* at 20. Third, in concluding the letters provided the required notice, the district court improperly made assumptions about Wendy's "purported subjective or constructive, outside-the-record knowledge." *Id.* at 23. Finally, according to Wendy's, the district court improperly

9

relied on purported facts that it determined Wendy's could have inferred from an investigation or review of its own files. These arguments do not persuade us that the district court erred in remanding the case.

A.

Wendy's argues that, in order to provide it with "clear and unequivocal notice that the amount in controversy in this action exceeds $5 million," the January 2023 letters had to contain "a factual basis for the demands" or "supporting calculations." Aplt. Opening Br. at 16. According to Wendy's, the demand letters, which merely stated a figure based on the unpaid wages the plaintiffs were seeking without adequately explaining the basis for the amount sought, did not trigger the removal period.

As Wendy's notes, this court has stated that "a plaintiff's proposed settlement amount is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (internal quotation marks omitted). The requirement that the settlement offer should "appear[] to reflect a reasonable estimate of the plaintiff's claim," *id.*, is consonant with the principle that a defendant's notice of removal should include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing § 1446(a)). Wendy's argues, however, that to "reflect a reasonable estimate" triggering the time period for removal a proposed settlement must do more than just state an amount that "demonstrate[s] plaintiff's own

10

estimation of its claim," *McPhail*, 529 F.3d at 956—it also requires the plaintiff to "show his work" in the form of factual allegations or underlying data. But Wendy's does not cite a case from this court that so holds, and we have not located such a case.

A plaintiff's "voluntary and unequivocal" representation about the amount he is seeking (for example, through deposition testimony) may be the "most important[]" factor in determining whether notice has been provided. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999). Such a representation, in tandem with the complaint's allegations and documentation received through discovery, provides "more information than is available to a defendant who receives an initial pleading specifying an amount of damages." *Id.* Notably, in *Huffman* we did not permit a defendant to wait to file a notice of removal until the plaintiff had produced an expert report that supported his damage calculations. *See id.* at 1076, 1079.

Wendy's urges us to follow an Eighth Circuit case, *Gibson v. Clean Harbors Environmental Services, Inc.*, 840 F.3d 515 (8th Cir. 2016). In *Gibson*, the court held that a letter from plaintiff's counsel that "recommended that a total payment in the amount of $6,500,000 would resolve this matter," and also contained "shifting class-size allegations" and individual awards based on differing class sizes, "none of which were supported by scientific evidence" did not "provide the necessary detail and clarity from which [the defendant] could ambiguously ascertain that CAFA's class-size and amount-in-controversy jurisdictional requirements had been satisfied"

11

sufficient to trigger the 30-day removal period. *Id.* at 521-22 (internal quotation marks omitted).

*Gibson* fits with our principle that a plaintiff's *ambiguous* statements do not provide adequate notice that triggers a duty of removal. *See, e.g.*, *DeBry v. Transamerica Corp.*, 601 F.2d 480, 488-90 (10th Cir. 1979) (reluctant and evasive deposition testimony did not start removal clock). But we are not persuaded to the extent *Gibson* goes further to require a plaintiff, who has already supplied a definite and clear statement of a specific amount he seeks to recover, to identify additional supporting facts before triggering removal.[3] Read in the way Wendy's suggests, *Gibson* would be inconsistent with our case law.

In *Paros*, for example, we held that a Colorado state court civil cover sheet on which the plaintiff's attorney had simply checked a box stating the amount in controversy exceeded $100,000 was an "other paper" that provided "adequate notice" to defendant that plaintiff's claim exceeded the $75,000 threshold for diversity jurisdiction. 835 F.3d at 1272-73 (internal quotation marks omitted). We found it significant that there was "no ambiguity in the cover sheet" and found "no reason not to credit an assertion by an officer of the court on a matter of significant consequence in the state proceeding." *Id.* at 1272. In the same way, Mr. Little's counsel made

---

[3] *Gibson* was a split decision. The dissenting judge concluded that the plaintiff's attorney's letter, which stated the attorney "recommended" a total payment of $6,500,000 in damages to resolve the matter and stated this was "plaintiff's settlement demand," was sufficiently clear to trigger CAFA's 30-day removal period. *Gibson*, 840 F.3d at 523 (Murphy, J., dissenting) (internal quotation marks omitted).

specific demands for damages in excess of $5,000,000 in demand letters intended by a Colorado statute to supply notice to a prospective defendant. Applying the principles in *Paros*, the demand letters supplied the required notice.

B.

Wendy's also argues the January 2023 letters did not reflect a reasonable estimate of the plaintiff's claims because they "did not purport to be settlement offers." Aplt. Opening Br. at 20. Wendy's again cites *Gibson*, specifically the Eighth Circuit's finding that counsel's letter in that case "did not specifically and unambiguously state . . . that [plaintiffs] were now seeking to recover that amount in damages or that they would definitively and finally settle the matter for the recommended sum." *Gibson*, 840 F.3d at 521.

Wendy's might have a legitimate concern in a case where the attorney's demand was mere puffery. But that is not the case here. Both demand letters from Mr. Little's counsel invoked Colo. Rev. Stat. § 8-4-109. That statute provides that "[i]f an employer refuses to pay wages or compensation . . . the employee's designated agent . . . may send a written demand for the payment on behalf of the employee or a group of similarly situated employees." § 8-4-109(3)(a). In addition, an employer that "fails or refuses to pay" wages due in response to such a written demand is liable for statutory penalties that may total up to "three times the amount

of the unpaid wages or compensation." *See id.* § 8-4-109(3)(b)(II).[4]  Thus, unlike the

mere "recommend[ation]" of an amount that would "resolve this matter" discussed in

*Gibson*, 840 F.3d at 521 (internal quotation marks omitted), Mr. Little made specific

demands that had statutory significance, *see Paros*, 835 F.3d at 1272 (crediting the

attorney's checking of a box on a civil cover sheet as "an assertion by an officer of

the court on a matter of significant consequences in the state proceeding").[5]

Mr. Little's demand letters, each of which contained a specific figure in excess of

$5,000,000, were sufficient to put Wendy's on notice of "the amount of monetary

damages sought or [of] facts from which an amount in controversy in excess of

$5,000,000 can be ascertained."  *Gibson*, 840 F.3d at 520 (internal quotation marks

omitted).

C.

Wendy's last two arguments attack the district court's order for going beyond

Mr. Little's representations within the four corners of his initial complaint and the

January 2023 letters to speculate about such factors as Wendy's own knowledge or

what Wendy's own investigation might have proved.  *See* Aplt. Opening Br. at 23-28.

---

[4] Wendy's argues that under Colorado law this statute cannot be applied retroactively in this action.  *See* Reply Br. at 16 n.10.  This misses the point that the amount Mr. Little's counsel demanded was tethered to the statute, whether or not that statute will ultimately apply in this case.  *See Paros*, 835 F.3d at 1272-73 (stating assertion in a cover sheet was relevant to amount in controversy "whether or not" the simplified procedures it was designed to trigger "will apply" to the case).

[5] The second demand letter specifically denied that it was a settlement offer. But in context, the reason for this may have been that Mr. Little and the class action plaintiffs might be able to seek *more* of a recovery than their estimated lost wages.

14

To support a conclusion that the demand letters provided a reasonable estimate of the amount in controversy, the district court could permissibly rely on documentation received through discovery. *See Huffman*, 194 F.3d at 1079. As Wendy's admits, the discovery "revealed that Wendy's operated approximately 40 Colorado restaurants during the class period, employing roughly 20 employees at each location, with a potential class of 6,000 members." Aplt. Opening Br. at 5. The evidence developed in discovery helped to show that the demand letters at least appeared to reflect a reasonable estimate of the plaintiff's claim, even if they did not provide a precise mathematical calculation underlying the estimate.

To the extent the district court went beyond the demand letters and the undisputed facts developed through discovery to speculate about Wendy's subjective knowledge, our de novo review is not tethered to the district court's reasoning. Instead, we "may affirm the district court for any reason supported by the record." *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). When determining whether to exercise our discretion to do so, we consider whether the ground for our affirmance "was fully briefed and argued here and below, whether the parties have had a fair opportunity to develop the factual record, and whether, in light of factual findings to which we defer or uncontested facts, the court's decision would involve only questions of law." *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 742 n.14 (10th Cir. 2020) (brackets and internal quotation marks omitted). Each of those factors weighs in favor of affirming for the reasons we have already stated, even if they differ slightly from those of the district court. Based on the law, the record, and

the issues litigated in district court, and without reliance on the district court's

allegedly improper findings, the district court reached the right result by remanding

to state court because Wendy's removal was untimely.[6]

IV.

We affirm the district court's order remanding this case to state court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[6] Wendy's also argues that starting the removal clock under these circumstances encourages unwarranted, protective removals that may later result in a remand for want of proof. But in a case like this, where the removal is based on the plaintiff's own unequivocal representation about the amount of his damages and the amount stated clearly satisfies the jurisdictional requirement, neither the plaintiff nor the district court is likely to challenge the existence of the amount in controversy. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.").