# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-1550

_____

Jefferson County

*Plaintiff - Appellee*

v.

M.D. Dannie E. Williams; Delmar Primary Care Associates, LLC; Gurpreet S. Padda; Comprehensive Pain Associates, LLC; Interventional Center for Pain Management, P.C., doing business as Padda Institute Center for Interventional Pain Management; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceuticals, Ltd.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions, Inc.; Endo Pharmaceuticals, Inc.; Allergan PLC; Actavis Pharma, Inc.; Mallinckrodt plc; Mallinckrodt LLC; SpecGx, LLC; McKesson Corporation; Cardinal Health, Inc.; Amerisourcebergen Corporation; AmerisourceBergen Drug Corp.; Hunt Fitz Drug, Inc., doing business as Keller Apothecary; Express Scripts Holding Company; Express Scripts Pharmacy, Inc.

*Defendant*s

Express Scripts, Inc.

*Defendant - Appellant*

Wal-Mart, Inc.; Target Corporation; Walgreen Company; CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, LLC; Caremark PCS Health, LLC; Caremark, LLC; Missouri CVS, LLC; Depomed, Inc.; United Health Group, Inc.; Optum, Inc.

*Defendant*s

OptumRx, Inc.

*Defendant - Appellant*

Mylan Pharmaceuticals, Inc.; Mylan N.V.; Richard S. Sackler, M.D.

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2025
Filed: July 28, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SMITH, Circuit Judge.

Express Scripts and OptumRX appeal the district court's[1] order remanding the case to state court based on their untimely removal. We affirm.

## I. *Background*

Express Scripts and OptumRX, pharmacy benefit managers (collectively, "PBMs"), administer drug plans for clients, including federal agencies such as the Department of Defense (DoD) and the Veterans Health Administration. Jefferson County, Missouri (County) brought this suit seeking relief under Missouri public nuisance law alleging that the PBMs harmed the public by facilitating prescription opioid abuse. Specifically, they alleged that the PBMs' preference to distribute these opioids led to 324 deaths and 1,941 emergency room visits, among other alleged

_____

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

costs to law enforcement, prosecution, prisons, and addiction treatment. Allegedly, the PBMs do this through formularies and pricing strategies, which "control[] which pain medications reach the marketplace." R. Doc. 13.

The County filed its initial Petition in the Twenty-Second Judicial Circuit Court of Missouri in the City of St. Louis. It then filed several amended petitions, including a second amended petition on June 15, 2020. On December 1, 2023, the PBMs filed a notice of removal seeking removal pursuant to 28 U.S.C. §§ 1442(a), the federal officer removal statute, and 1446(b)(3). The County then sought remand to state court, which the district court here granted. The PBMs appeal the grant of the remand motion.

This case, at one point, was part of the federal Opioid Multidistrict Litigation (MDL). It had been removed by then-defendant CVS to *In re National Prescription Opiate Litigation*, 1:17-md-2804-DAP, R. Doc. 1987 (N.D. Ohio July 22, 2019). But on July 24, 2019, the district court in that case severed and remanded this case to a Missouri state court. The PBMs had objected to the severance and remand while the MDL had the case. *See id*. at R. Doc. No. 1931.

After severance and during discovery, the PBMs requested the County to identify whether the claims that it alleged were related to the PBMs' contractual services with federal health plans. In response, the County provided a "Red Flag Analysis." The Red Flag Analysis identified the prescription claims that the County was relying on in its case. The County continually updated this Red Flag Analysis, including the Sixth Red Flag Analysis served on February 3, 2022. The Sixth Red Flag Analysis contained claims made by Express Scripts related to the DoD. On the same day, the County sent an email and letter to the PBMs claiming that it was withdrawing the analysis based on an error. On February 14, 2022, the County sent a new Red Flag Analysis, which still contained federal claims.

On March 10, 2022, the PBMs sent a letter to the County saying that they intended to remove the action to federal court unless the County

inform[ed] the PBM Defendants in writing on or before March 14, 2022, that it is withdrawing all challenges to federal prescription claims and [would] not seek recovery from the PBM Defendants based on the federal prescription claims—including but not limited to claims under the Federal Employee Health Benefit Act and claims adjudicated or processed for a plan controlled or sponsored by a federal governmental department or entity (for example, the Department of Defense). . . .

R. Doc. 38-1, at 4. In the letter, the PBMs contended that the County's "February 14 Red Flag Analysis shows for the first time that the County contends that many different federal prescription claims support its claims against the PBM Defendants. Given that fact, the PBM Defendants are entitled to remove this case to federal court." *Id.*

Despite the inclusion of federal prescription claims in the Red Flag Analysis, the County disclaimed any future reliance on these claims. In a March 11, 2022 letter and a March 16, 2022 joint stipulation, the County agreed that it would "not now or at any time in the future seek to establish liability against" the PBMs related to any "Federal Plan." R. Doc. 1, at 10.

Then, on November 15, 2023, the County produced three expert reports discussing theories of liability. These reports did not differentiate between federal and non-federal prescription claims. The PBMs interpreted the County's filings as indicating its intent to establish liability using the federal claims. In response, the PBMs moved for removal of the action to federal court under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. The County, in turn, moved the district court to remand the case to state court. The district court granted the County's motion to remand to state court.

The district court based its remand decision on two considerations. First, citing 28 U.S.C. § 1446(c)(3), the district court found that the PBMs' removal was untimely. The PBMs were required to file a notice of removal within 30 days of

-4-

February 14, 2022, but failed to do so. The district court relied on the PBMs' acknowledgements in their stipulation with the County and the March 11, 2022 letter sent to the County to establish the PBMs' awareness of the deadline for seeking removal. *See* R. Doc. 2-16, at 1 ("[O]n February 14, 2022, [the] County served the PBM [d]efendants with [discovery]. . . . that . . . include[ed] federal prescription claims adjudicated or processed by the PBM [d]efendants. . . ."); *see also* R. Doc. 38-1, at 4 ("The February 14 Red Flag Analysis shows for the first time that the County contends that many different federal prescription claims support its claims against the PBM [d]efendants. Given that fact, the PBM [d]efendants are entitled to remove this case to federal court."). The district court determined that the documents established that the PBMs could have sought removal as of February 14, 2022.

Second, the district court found that even if the notice of removal was timely filed, removal would still not be substantively proper under 28 U.S.C. § 1442, as the County had disclaimed all potential liability on the part of the PBMs related to any federal claims, both in the March 11, 2022 letter and the joint stipulation that followed.

The PBMs appeal the district court's order granting the County's motion to remand the case to state court. [2]

---

[2]The County filed a motion to dismiss this appeal and a petition for mandamus. In its motion, the County argues that this court lacked jurisdiction to hear the appeal because the district court had not yet entered an order remanding the case to state court. This is despite the district court's decision stating that it was "[h]ereby ordered that Plaintiff's Motion to Remand . . . [be] granted." R. Doc. 58, at 12 (capitalization and bold omitted). The County points to the following line in the order, which stated that "[a] separate [o]rder of [r]emand will be entered after 12:00 p.m. on Friday, March 15, 2024, unless Defendants file a notice of appeal." *Id*. But we look to the "substance of the order," and the district court's order was an order remanding the case back to the state court. *Meierhenry Sargent LLP v. Williams*, 915 F.3d 507, 509 (8th Cir. 2019). The line mentioning a separate remand order was effectively a stay of the remand pending appeal, which the PBMs had requested. We thus have jurisdiction to hear the appeal under 28 U.S.C. § 1447(d), and the County's motion is denied. The petition for mandamus is likewise denied,

## II. *Discussion*

On appeal, the PBMs argue that the district court applied the wrong legal standard to determine that their removal was untimely. They suggest that the district court applied an improper discretionary standard. They assert that the court determined the County's February 14 Red Flag Analysis triggered the 30-day clock under § 1446(b)(3) because the PBMs *could have* removed the case at that time. The PBMs argue in favor of a mandatory standard. They contend that § 1446(b)(3) requires an unequivocal statement from which they could have unambiguously ascertained that removal was available. The PBMs contend that the February 14 Red Flag Analysis was not unambiguous and did not require them to remove based on its contents or cause them to forfeit the ability to seek removal. "We review the district court's decision to remand de novo." *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 709 (8th Cir. 2023) (emphasis omitted).

The federal officer removal statute permits removal of a state lawsuit to federal court when it is commenced against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity." 28 U.S.C. § 1442(a)(1). Notice of removal must be filed within 30 days. *Id.* § 1446(b).

The 30-day period becomes applicable when developments in the case record permit ascertainment that the suit qualifies for removal. Subsection (b)(3) states that

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

---

as the County has not demonstrated that it has complied with the requirements for the petition under Fed. R. App. P. 21(a).

*Id.* § 1446(b)(3). This 30-day removal period does not begin "until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper 'from which the defendant can unambiguously ascertain'" that the case is removable under § 1446(b)(3). *Gibson v. Clean Harbors Env't. Servs., Inc.*, 840 F.3d 515, 520 (8th Cir. 2016) (quoting *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016));[3] *see also Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093–95 (9th Cir. 2021) (applying the "unequivocally clear and certain" standard); *Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 372 (5th Cir. 2021) (same).

We conclude that the PBMs unambiguously and unequivocally ascertained that the February 14, 2022 Red Flag Analysis allowed removal of the case. The PBMs said as much in their March 10, 2022 letter.[4]

The PBMs argue that the County's withdrawal and/or its disclaiming any reliance on federal claims in its Red Flag Analysis prevented the February 14, 2022 Red Flag Analysis from qualifying as "unequivocal" or "unambiguous[]" statements supporting federal officer jurisdictional requirements. Appellants' Br. at 35

---

[3]The County argues that *Dahl v. R.J. Reynolds Tobacco Co.* provides a less stringent definition of "ascertain" to trigger the 30-day clock. 478 F.3d 965, 970 (8th Cir. 2007). But *Dahl* is inapposite. There, we held that because the case was removable at the time of the initial filing of the case, § 1446(b)(3)'s "order or other paper" clause could not be triggered to allow a new 30-day clock for removal. *Id.*

[4]*See* R. Doc. 38-1 ("[T]he PBM Defendants intend to remove this case to federal court. The basis for this letter is the County's . . . February 14, 2022 [discovery,]" which "shows for the first time that the County contends that many different federal prescription claims support its claims against the PBM [d]efendants. Given that fact, the PBM [d]efendants are entitled to remove this case to federal court."); s*ee also City of Martinsville v. Purdue Pharma, L.P.*, No. 4:24-CV-00002, 2024 WL 4218847 (W.D. VA. Sep. 16, 2024) (finding removal untimely and waived in situation nearly identical to the instant case when PBMs threatened removal after discovery revealed grounds for removal, then entered stipulation with city to limit federal claims), *aff'd sub nom.*, *City of Martinsville v. Express Scripts, Inc.*, No. 24-1912, 2025 WL 1039624 (4th Cir. Apr. 8, 2025) (unpublished per curiam) (upholding remand based only on waiver).

-7-

(alteration in original) (quoting *Gibson*, 840 F.3d at 520). They argue that if they had removed the case when the County's February 14, 2022 Red Flag Analysis was received, the district court would have taken into account the County's withdrawal/disclaimer and concluded that federal officer jurisdiction did not exist. The PBMs assert that the district court must "apply a reasonable amount of intelligence to its reading" of documents submitted by the plaintiff, and such a reading would have required it to conclude that the February 14, 2022 Red Analysis was equivocal or ambiguous. *Id.* at 34 (quoting *Gibson*, 840 F.3d at 519). But this argument does not address whether the filing of the analysis triggered the 30-day clock for removal under § 1446(b)(3). The County's previous express stipulation may have affected whether the County could meritoriously dispute removal but not whether the PBMs could seek it in the first place.

The PBMs further argue that because of the allegedly ambiguous nature of the withdrawal/disclaimer, removal was at most discretionary, not mandatory, and thus the 30-day clock should not have begun to run. *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146 (2d Cir. 2014) ("[E]ven if a defendant *could* remove … because the case satisfies the requirements of federal subject matter jurisdiction, a complaint or other document from the plaintiff that does not explicitly convey the removability of a case does not trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3)."). But *Gibson* and *Cutrone* did not deal with the situation here, as the PBMs did "unambiguously ascertain" a right of removal, stated their knowledge of that right to the plaintiff, but decided not to remove in reliance on a stipulation from the County disclaiming federal liability. *Gibson*, *Cutrone*, and § 1446(b)(3) do not provide any basis for a withdrawal or cancellation of an unambiguous statement.

In conclusion, the PBMs failed to timely remove after clearly ascertaining that removal was available to them following the County's service of its February 14, 2022 Red Flag Analysis. The PBMs were required to remove within 30 days of receipt of that discovery because that discovery contained "federal . . . claims" that

allowed "PBM [d]efendants . . . to remove this case to federal court." R. Doc. 38-1, at 4.[5]

III. *Conclusion*

Accordingly, we affirm the district court's order to remand the case to the state court.

_____

_____

[5]Because we hold that the PBMs failed to timely remove after service of the February 14, 2022 Red Flag Analysis, we do not address (1) whether the initial pleading was removable; (2) whether removal would have been substantively proper given the County's stipulation not to pursue federal claims; or (3) whether the PBMs waived their right to remove after litigating in state court following that stipulation.